## WALES v. WATERBURY MANUF'G CO.

(Circuit Court, D. Connecticut. January 1, 1894.)

1. PATENTS—ANTICIPATION.
   One who takes old devices, having material defects, and, with a definite idea of remedying the same, retains the desirable features, and adapts them by novel modifications to new and varying conditions, so as to produce an article confessedly superior to all others, is not anticipated by such prior devices.

2. SAME—INVENTION—PRIORITY—LEVER BUCKLES.
   The Wales patent, No. 172,527, for an improvement in lever buckles, was not anticipated as to claims 1, 2, and 3 by the House or Wardwell patents, Nos. 147,325 and 152,200; and was prior in time to the Smith patent, No. 167,947; but is void for want of invention as to claims 4, 5, and 6.

In Equity. Suit by Harriot H. Wales against the Waterbury Manufacturing Company for infringement of patent. Decree for complainant.

Geo. R. Blodgett, for complainant.
Geo. E. Terry, for defendant.

TOWNSEND, District Judge. This is a bill in equity, alleging infringement of letters patent No. 172,527, granted January 18, 1876, for an improvement in lever buckles. The defense alleges prior invention by Dwight L. Smith, and anticipation by prior patents. Complainant's device belongs to the class of lever buckles adapted to receive the edge of a fabric of indefinite length, and to hold it in attachment by the use of a lever. It consists of a metal blank, constituting the baseplate, with its two opposite sides so bent as to form side lugs parallel to each other at right angles to said plate. The base plate is slitted at the sides or corners, and extends at its center beyond said lugs, so as to form a tongue. The outer or lower ends of the side lugs are perforated, so as to make the bearings for a lever. This lever consists of another metal blank, having one of its ends so bent at right angles to the main part or body of the blank, and so journaled at the corners made by said angle, as to bring the bent end of said lever against the base plate, and at right angles thereto when the buckle is closed, and to then permit the body of the lever to fit between the upturned sides of said lugs.

The claims of said patent are as follows:

"(1) In a lever buckle, the base plate, A, having slots or openings, F, F, substantially as and for the purpose herein set forth. (2) The combination of the lever, C, with the base plate of lever buckles, having the cuts or openings, F, F, therein, substantially as and for the purpose herein set forth. (3) The combination of the lever, C, with the base plate of lever buckles, having slots or openings, F, F, therein, and the spring tongue, D, substantially as described. (4) The combination of the lever, B, with the body plate of lever buckles, having the cuts or openings, F, F, therein, substantially as and for the purpose herein set forth. (5) The combination of the two levers, B and C, with the body plate of lever buckles, having the cuts or openings, F, F, therein, substantially as and for the purpose hereinbefore set forth. (6) A lever buckle, having at one end the lever, C, slots, F, F, and spring tongue, D, and at the other a suitable fastening device, substantially as described."

In support of the claim of anticipation defendant introduced in evidence certain patents, and certain models showing modifications thereof. Several of said exhibits were introduced for the purpose of showing that there was no novelty in claims 4, 5, and 6, for the combination of double levers, working in opposite directions, at opposite ends of the same plate; or for the combination of one lever with a suitable fastening device at the other end of the buckle. Said claims for said alleged combinations are so manifestly void for lack of invention or patentable novelty, in view of the state of the art, that I shall not consider the evidence thereon.

The main object of the alleged invention was to provide a buckle by the use of the rigid upturned lugs and the slitted sides, into which material of a greater width than the body of the buckle, and of varying thicknesses, might be passed beyond the pivot bearings, and firmly gripped by the lever at a point opposite the bearing point of the lever, and considerably within the edge of the fabric.

It is alleged that patent No. 147,325, granted to Henry A. House, February 10, 1874, and No. 152,200, granted to W. S. Wardwell, June 16, 1874, show a clear embodiment of the device covered by claims 1, 2, and 3 of the patent in suit. The Smith patent will be considered later. The buckle made in accordance with the House patent shows a form of construction whereby a blank is bent in the shape of a U, so that the bent portion is parallel with the body of the blank, and forms its face. The ends of the bent portions are turned up, so that the bearings of a grip lever may be journaled therein. The bend in the blank furnishes the spring action of the buckle. The chief defects in this buckle were the following:

(1) The U shape of the blank prevented its use as a strap buckle; that is, where a fabric, like a suspender, was not to be gripped on its edge, but was to pass through the buckle. (2) The U-shaped blank furnished a weak spring for the buckle, and an inadequate bearing for the lever. (3) The limited space between the point of contact of the lever and the bend of the blank, was insufficient to receive a fabric of any considerable length; while the lengthening of the ends of the bent blank, so as to afford greater receiving distance, would so further weaken the spring as to unfit it to exert a grip on the fabric.

The insufficiency of the spring was recognized, and an attempt made to remedy it in said buckle as manufactured, by having the back of the blank or base plate cut out, so as to admit and hold an extension of the engaging end of the grip lever.

The Wardwell buckle has the sides of the base plate upturned at right angles, said sides being journaled at one point to receive the bearings of the grip lever, and at another point to receive the bearings of an accessory plate interposed between the grip lever and the base plate. A flat spring is riveted to the base plate, so as to hold said accessory plate open when not in engagement. The grip of the fabric is secured in this buckle by extending the base plate and accessory plate so as to form jaws beyond the side lugs of the lever. The chief objections involved in this construction are the following:

(1) In no case can a fabric wider than the body of the buckle be inserted under the actual bearing point of the lever. (2) The strongest compression of the jaws of the two plates against such fabric must necessarily be at its extreme edge. (3) The pressure of the material against said plates beyond the bearing point of the lever would naturally cause the accessory or clamping plate to so bend or flare outwardly as not to grip the material. (4) The riveted spring interferes with the practical use of the buckle to receive materials intended to pass through the buckle. (5) The rear end of the lever is not housed or protected when the buckle is closed. (6) As the bearings of the lever are at the point of its contact with the base plate, the base plate is necessarily rigid at that point. (7) It necessarily results from these features of construction and operation that there is practically no spring action at the point of greatest pressure, and no adaptability to receive and hold fabrics of varying thicknesses.

When Wales set out to devise a lever buckle, the field for invention was very limited. But there was some inherent defect of construction, or difficulty in the way of practical operation, in all of the buckles previously manufactured. None of them was adapted for all the various purposes for which such a buckle is to be employed. Under these circumstances he invented something new in construction and operation, accomplishing the new and useful results of adaptability to all lengths widths and thicknesses of fabrics, of a firm grip, by the new means of a combination of elastic base plate and rigid upturned side lugs, slitted so as to receive the edge of the fabrics beyond the grip of said lever, and of a bearing of the lever upon the fabric at the point where its leverage was greatest, said elastic base plate forming a spring tongue, whose action was independent of the proportion and construction of said lever bearing. By this mode of construction he also secured a protection for the rear end of the lever, so that when the buckle was closed, it would be housed, and kept in position by the upright side lugs. The only question is whether such an invention discloses patentable novelty, or whether it would naturally have occurred to any person skilled in the art. That it did not so occur, either as to

means or result, is evident from the patents heretofore discussed, and from others in evidence in the case.

The following considerations seem to me to be pertinent to this inquiry: The old, simple side-lug buckle was impracticable. House, Wardwell, and Wales had it before them. Each tried to invent an improvement. Each secured, in a different way, a result, and each obtained a patent therefor. That the improvements of House and Wardwell presumably involved invention, and that the improvement of Wales accomplished other and more useful results, suggest that the prior inventors must have striven to accomplish these results, and failed, and that such improvements involved the exercise of invention, and would not have occurred to any person skilled in the art. Thomson v. Bank, 3 C. C. A. 518, 53 Fed. 250.

That Wales had these buckles before him seems to support the claim that his buckle involved creative skill, for, instead of following out their ideas, he recognized the defects necessarily inherent in their plans of construction, and abandoned them. It was not, therefore, the "carrying forward of the original thought," but the introduction of new features, producing better results, not analogous to the old results, and of such a character as to require the exercise of the inventive faculty to conceive and produce them. Manufacturing Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472; Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601; The Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450.

It seems to me that the patentee had a definite object in view, and a distinct idea of means appropriate to effect such object, and that the difficulties obviated and results accomplished show him to have been a meritorious inventor, and, as such, entitled to a patent.

It may be said generally, in regard to the defense of anticipation, that it proceeds upon the theory that anticipation is necessarily proved by merely showing one prior solution of a problem. This theory overlooks the consideration that, even if in this case the House or Wardwell buckle had completely fulfilled all the requirements of a practical buckle, yet, if another person afterwards invented a new way of accomplishing the same result by the application of a new means to produce such result in a different way, he might be entitled to a patent therefor. Wales did not take the U buckle of House, nor the projecting clamp buckle of Wardwell. He did not avail himself of the ideas embodied in either of these inventions, but went back to the old familiar form of side-lug buckle, and, taking it as a basis, retained its desirable features, adapted them by novel modifications to new and varying conditions, and thereby evolved not only a new buckle, operating on a new principle, but one confessedly possessing marked advantages over all of those already invented.

Upon the defense of prior invention it appears that on September 21, 1875, patent No. 167,947 was granted to one Dwight L. Smith for a buckle embodying substantially the same invention as that claimed in the patent in suit. The applications for these patents were in interference, and the question of priority of invention was

decided by default in favor of Wales, the assignor of complainant. But defendant claims that before the alleged invention of Wales said improvement in buckles was known to and used by said Smith. It appears that Wales made his first drawing of the patented article between August or September and December, 1873, and the model thereof about December 12, 1873. Smith testified in his direct examination that as early as November 1, 1873, he made a drawing and model, embodying the invention claimed in his patent. In the interference proceedings he stated that he conceived the invention in the autumn of 1873, made a drawing as early as November 1, 1873, and a model as early as May 1, 1874. On cross-examination, he testified as follows:

"Cross-Int. 20. Did you file a preliminary statement in that case? Ans. I do not now recollect whether I did or not. Cross-Int. 21. If you did file a preliminary statement, and the same differed to any extent from your present testimony, to which would you give the preference in point of accurate recollection,—your present memory or your statements in the preliminary statement? Ans. As the matter at that time was more fresh in my memory, I should say that with regard to the testimony given at that time I should be more likely to be correct than now. Cross-Int. 22. Do you intend by your present testimony to make any claim that you made a model exhibiting the invention described in your patent earlier than the earliest date named by you in your preliminary statement? Ans. I do not."

His explanation, on redirect examination, of the apparent discrepancy between these statements, is as follows:

"R-D. Q. 33. I have before me a certified copy of the proceedings in the interference case between yourself and Mr. Wales, wherein it appears, in your preliminary statement, you used this language: 'The following spring,' (that is, in 1874,) 'as early as May 1st, I made a model substantially like the model accompanying the application for patent.' Does this refer to the model offered in evidence and marked 'Defendant's Ex., Smith Model No. 1,' or to some other model? A. It refers to another model embodying the same principle. R-D. Q. 34. Do you still adhere to your former statement that the buckle marked 'Defendant's Ex., Smith Model No. 1,' was made about the time you conceived the invention contained in the said letters patent, or do you wish to qualify it as having been made at a subsequent time, as would have been implied by the cross-examination? A. If I should tell what I thought, I should say it was made about the time the drawings were made, or soon after, which was in the fall of 1873; but I can't tell positively."

This indefinite statement, taken in connection with the admission upon cross-examination and the interference proceedings, seems to me insufficient to sustain the burden of proof that said Smith was the prior inventor.

The complainant is the wife of the patentee, and acquired title to said patent in 1879. In 1880 she granted an exclusive license to the defendant to make the patented buckles under a royalty, which license was forfeited by defendant, and was canceled June 4, 1881. Since the termination of said license, defendant has continued to manufacture and sell buckles covered by the claims of said patent. It is alleged, and is not denied, that defendant also continued to put such buckles on the market, on cards identical in size, design, and in all other respects, with those designed by the patentee, and used by defendant during the continuance of said license,

except that the patent date stamped on said cards has been changed from that of the patent in suit to that of said House patent.

The defendant practically admits infringement. From one of the exhibits it appears that it has used a bearing plate interposed between the grip-lever and the base plate. This is not essential, does not affect the relation or operation of the infringing device, and is either a colorable modification or one which has been adopted for convenience. In view of all these circumstances, I think the evidence of practicability, adaptability, and general utility should resolve any possible doubt in favor of complainant. He has confessedly presented the most useful, and apparently the only practical, solution of the problem presented, and is entitled to the benefit of his patent for the invention as described by him, and claimed in claims 1, 2, and 3 of said patent.

Let there be a decree for an injunction and an accounting as to said claims 1, 2, and 3.