## WALES v. WATERBURY MFG. CO.

### (Circuit Court, D. Connecticut. June 20, 1898.)

PATENTS—INFRINGEMENT—DAMAGES AND PROFITS.

Where complainant executed a license to defendant, but, after defendant began to manufacture thereunder, canceled the license, and defendant continued to manufacture and sell the goods, the measure of damages is not to be determined by the license fee, but by the actual profits of defendant.

This was a suit in equity by Harriet H. Wales against the Waterbury Manufacturing Company for alleged infringement of a patent. The cause was heard on exceptions to the master's report.

Henry Stoddard and Roger S. Baldwin, for complainant.

Charles R. Ingersoll, Geo. E. Terry, and John K. Beach, for defendant.

TOWNSEND, District Judge. In this cause, upon final hearing, the court held that certain claims of the patent in suit were infringed, and referred the matter to a master for an accounting. 59 Fed. 285. The questions herein arise upon exceptions to the master's report. The patent was for an improved buckle. Complainant gave defendant a license to manufacture said buckle upon payment of a royalty of 15 cents a gross. The buckle was also used in connection with a pencil holder to be attached to the clothing, and, for each gross of buckles and pencil holders combined, defendant agreed to pay a license fee graded according to the selling price, and amounting to $2.03½ where the selling price was $5.08 per gross. After defendant had commenced to manufacture, complainant canceled the license. Defendant continued to manufacture, and complainant brought suit. The license was canceled in June, 1881. The bill was filed in November, 1881, and the answer was made in May, 1882. Complainant first began to take evidence seven years later, and brought the case to the court for a final hearing in 1893, after the patent had expired. Complainant in the meantime made no attempt to manufacture. Defendant manufactured between June 15, 1881, and January 18, 1893, 11,609 5/12 gross of buckles, of eight different sizes and prices, 9,561 of which were made in connection with a pencil holder. Large profits were made on No. 1,403, which was used in the pencil holder.

The principal contention herein is as to what share of their profits should be assigned to the buckle. The master suggests several different methods of estimating the amount to be allowed the complainant: First, the license fee agreed upon for buckles and for buckles attached to pencil holders, which would amount to $19,010.61; second, a deduction of 15 cents from the profit on the pencil holder, leaving all the other profits to the complainant, which would amount to $32,431.18; third, a division of the profits of the pencil holder according to the respective cost of the holder and buckle, which would give the complainant $21,454; fourth, a division of the profits of the pencil holder equally on four elements named by the master, which would give the complainant $25,383.49. Defendant insists that the claims allowed do not cover the entire buckle; that the buckle used in the pencil holders was different from the others, and was improved by defendant; that there is no definite proof as to the amount of profits accruing to the complainant from the patented part of the buckle; that, as complainant has never attempted to manufacture, she has suffered no damages; that complainant cannot recover an amount based on her license contract; that, having canceled her license, she can now recover only legal damages for infringement; and that, if the license fee is to be given, it should be the license fee on the buckle only, or 15 cents for each gross of buckles sold, which would make about $1,740. Defendant submits a statement of receipts and costs, in which it estimates the amount received for the buckles used with the holder at the same price as that for which it sold the same buckles without the holders, and makes the amount of its profits $2,690.04, which it claims to be the whole profits for which it can be liable in any event.

I think defendant is right in its contention. Complainant appears to have preferred an accounting for defendant's profits after the expiration of the patent to an adjudication upon the patent during its life. Complainant is only entitled to the profits made upon the buckle. The 15 cents license fee on the buckle might be adopted as the measure of profits except that, taking the selling price and cost of the buckles at defendant's own estimate, its profits were manifestly greater than this license fee. The seven numbers or sizes of buckles sold, other than those combined with the pencil holders, make about 2,130 gross of buckles, for which defendant admits that it received $2,408.63. Defendant's estimate of the cost in making these buckles is $1,975.33, which would leave a profit of $433.30. The master's estimate of the costs, correcting a manifest clerical error, and supplying a manifest omission, is $1,973.50, or $1.85 less than that of complainant. Complainant admits, however, certain omissions on the part of the master, and that the actual cost, based on the master's estimates and supplying his omissions of the No. 1,403 buckles, was $2,085.50. This reduces the profits on the buckles other than No. 1,403 to $323.13, instead of $433.30, which defendant admitted in its account. Of No. 1,403, 116 gross were sold for about $174, which defendant says should fix the price for those attached to pencil holders. Altogether about 9,478 gross of No. 1,403 were sold, and, at the price thus fixed, would amount to $14,245.25. De-

fendant estimates their cost at $1.26½ per gross. The master estimates their cost at $1.03. Inasmuch as the master's estimate of cost on the other buckles exceeds that of defendant, and the defendant has furnished no definite statement of errors on this No. 1,403 which I am able to adopt or complainant's counsel admits to be correct, I shall adopt the master's instead of the defendant's estimate of cost, which gives a cost of $9,762.21; and deducting this profit from the admitted selling price of $14,245.23 leaves $4,483.02, which, added to $323.13 profits on the other series, makes $4,806.15. In regard to the selling price adopted by complainant, the actual selling price of the buckles sold separately was 15½ per cent. above the cost, as admitted by complainant. In the case of No. 1,403 the selling price is more than 45 per cent. above the cost, which indicates that it is sufficiently high; that is, the complainant is allowed about three times the proportionate profit on No. 1,403 that was made on the other numbers in which the actual selling price and cost are admitted by complainant. Furthermore, as the claims allowed do not cover the whole buckle, and as defendant improved the buckle for this particular purpose, and added a new element thereto, the share of profit to be assigned to the buckle must, as the report in other ways makes evident, be a matter of opinion, upon which different minds would necessarily differ. I think the above amount is as much as should be assigned to the buckle and recovered by complainant upon all the facts before me, and especially in view of her delay in enforcing her rights. Let judgment be entered for complainant for said sum of $4,806.15.