### CARY MFG. CO. v. DE HAVEN.

(Circuit Court of Appeals, Second Circuit. May 24, 1905.)

#### No. 213.

PATENTS—DAMAGES FOR INFRINGEMENT—BOX-STRAP REEL.

A decree awarding nominal damages only for infringement of the Cary patent, No. 403,247, for a reel for metal box-strap, affirmed on evidence showing that the reel was of slight value or utility; that in selling box-strap both complainant and defendant mounted the coils upon reels, for which no charge was made; and that the strap was salable independently of the reels.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

For opinion below, see 88 Fed. 698.

A. G. N. Vermilya, for appellant.
W. P. Poeble, Jr., for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge.   The decree appealed from adjudged that the defendant has not infringed complainant's patents for an improvement in box-strap, and, as to those patents, dismissed the bill.   It also adjudged that defendant had infringed complainant's patent No. 403,247, for an improvement in a reel for box-strap, and awarded complainant nominal damages for such infringement, and an injunction restraining future infringement.

The complainant has appealed from so much of the decree as awards nominal damages only against the defendant for the infringement of the reel patent, and, by its assignments of error, insists that the decree was erroneous in refusing to it a recovery of profits and damages in a substantial amount.

During the period of infringement—from August, 1893, to September, 1898—the complainant and defendant were competitors in the business of making and selling iron box-strap, an article used for strapping packing boxes, which is made of sheet metal, and wound into a coil, from which the user cuts the desired length to fit the box to which it is to be applied.   For convenience in handling it, the coiled strap is commonly put up in a frame or reel.   The complainant and defendant usually sold the strap coiled in the reels to their customers, making the price for the strap only, as the cost of the reel was a trifling item.   During the period of infringement the defendant made and sold 31,000 of the patented reels having the strap coiled thereon, but, as he made no charge to his customers for the reels, he did not make any profits upon the reels; and, as the complainant did not make any charge to its customers for its reels, it did not sustain any damages by the loss of profits upon them caused by the diversion of its traffic by the defendant.

The complainant insists that the strap could not have been sold without the reels, and for this reason that it should have been awarded the profits which the defendant made upon the strap sold by him during the period of infringement, together with the damages accruing from loss of complainant's profits upon diverted sales of strap during that period.   If the proofs had shown that the strap could not have been sold except with the patented reels, the contention for the appellant would be supported by the authority of cases like Wales v. Waterbury Manufacturing Co., 101 Fed. 126, 41 C. C. A. 250.   But the proofs do not show this, and not only the direct evidence, but also the presumptions deducible from the small utility of the patented invention, authorize and require a contrary conclusion.   That the strap was salable independently of the reels is shown by the fact that during the period of infringement and subsequently the defendant sold it in considerable quantities without reels, as well as with reels which did not infringe the patent.   The proofs also sustain the finding of the master upon the accounting that the complainant sold it during the period of the infringement "both with and without having a reel or frame attached, and made no advance of price in the box-strap by reason of attaching the patented reel."   While the evidence shows that the purchasers of strap generally wanted the reeled strap, it does not show that they cared particularly whether the strap was mounted up-

on a reel containing the invention of the patent, or upon a reel or frame which did not contain the invention. The necessity for a frame or reel arose from the elastic nature of the strap. As the strap is cut from sheet metal in long strips (some 300 feet long), it requires to be put in compact form for handling and transportation, and consequently is usually wound in a coil; and thus it requires to be held in place, or it will partly uncoil and fall apart. Before the patented reels were made the coiled strap was sold by the patentee in a shallow circular box, made of thick paper, having a slit in the edge to permit the strap to be pulled out. Manifestly, when the strap was put in such a box it could be readily transported and conveniently used; and there is no reason to doubt that, if purchasers had been offered it at a reduced price, they would have bought it freely, and probably as freely when put up in that form as if it was mounted in the patented reel.

The patented reel is a frame consisting of a metal band bent upon itself so as to form two arms, one extending across the front and the other across the rear of the coil of box-strap, and having a spool mounted upon a metal peg between the two arms. The arms have holes at their upper and lower ends—one for the insertion of the metal peg on which the spool is mounted, and the other for inserting a nail or peg for fastening the frame against a post or other convenient support. When the strap is coiled around the spool, the spool is placed in the frame, and the metal peg is inserted. The coiled strap will then be held in place for transportation, and when it reaches the user he can nail it against a wall or post, cut off a desired length, and when that length is cut off the rest of the coil remains compact. The only novel feature in this device was the resiliency of the arms. This enabled them, by driving in the nail at the upper end, to operate as a brake to prevent the strap from being reeled off too rapidly. Whether this theoretical advantage ever attracted a purchaser does not appear. No witness speaks of it as influencing his purchase, and, so far as appears, no user ever discovered its practical value. In considering the question of the validity of the patent, the learned judge of the court below said: "The patent is an extremely narrow one. It would not be infringed by defendant's device if the latter had its arms rigid against compression, so that they could not act as brakes." If the arms of defendant's device had been made of sheet metal a trifle thicker than that used, it would not have infringed the patent.

The theory that an invention of this insignificant value was so indispensable to the users of box-strap that no purchasers would have been found for the strap unless it was put up in the patented reel is preposterous. While it may be conceded that the patented reels helped to sell more or less of the box-strap, the proofs utterly failed to show that the strap would not have been marketable except as an adjunct to them.

The judgment is affirmed, with costs.