### WALES v. WATERBURY MFG. CO.

(Circuit Court of Appeals, Second Circuit. February 28, 1900.)

#### No. 11.

1. PATENTS—VALIDITY—LEVER BUCKLES.
    The Wales patent, No. 172,527, for an improvement in lever buckles, was not anticipated, and is valid as to claims 1, 2, and 3.
2. SAME—INFRINGEMENT—PROFITS RECOVERABLE.
    An infringer is liable for the entire profits made by the manufacture and sale of an article containing the patented device, where it appears that, but for the patented feature, the article would not have been salable.

Cross Appeals from the Circuit Court of the United States for the District of Connecticut.

Roger Foster and Roger S. Baldwin, for complainant.
John K. Beach, for defendant.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. We agree with the conclusions of the learned judge who decided the cause in the court below as to the validity of claims 1, 2, and 3 of the patent in suit, and deem it unnecessary to add anything to his very satisfactory opinion. 87 Fed. 920. We are unable, however, to agree with his conclusions in respect to the amount of profits which the complainant was entitled to recover.

The patent is for an improved lever buckle, adapted for use upon various articles of men's and women's wearing apparel. The buckle of claim 3, as appears from the demand which it eventually supplied in the trade, is especially adapted to be the fastening device of a pencil holder, a metal case or frame shaped to receive a lead pencil, and pivoted upon the base of the buckle, and forming, with the buckle, a

pencil carrier to be worn on the edge of the watch or side pocket of the vest. The pencil holder was devised by Mr. Wales, one of the patentees and the inventor of the buckle, who conceived that when it was attached to the buckle the integral device would be attractive and convenient, and would especially command the favor of the stationers' trade. He introduced the buckle and pencil holder to the notice of the defendant, and made arrangements with the defendant to become the sole manufacturer. Probably because the pencil holder alone was useless, and derived its whole value by being attached to the buckle, and the integral device could not be made or sold without infringing the buckle patent, Mr. Wales did not patent the combination. The patent having been in the meantime assigned to the complainant, the wife of the inventor, in 1880 she made a license agreement with the defendant, by the terms of which she granted to the defendant the exclusive right of making and selling the buckle, and the defendant agreed to pay a royalty varying from 10 to 25 cents a gross for the buckle alone (depending upon the sizes), and when sold with the pencil holder to pay a graded royalty amounting to $2.03½ per gross when the sale price should be $5.08. In the following year the complainant revoked this license, alleging noncompliance by the defendant with the license; but the defendant, notwithstanding, continued to make and sell the buckles and pencil holders, and between that time and the date of the expiration of the patent sold 9,361 gross of the combined article, realizing therefrom as net profits admittedly the sum of $22,887, and, accepting as correct the findings of the master upon the accounting, a considerably larger sum. Upon the basis of the license the royalties upon these sales would amount to over $19,000. The court below awarded the complainant $4,483 for these profits, arriving at the amount by charging the defendant only with the difference between the cost of the buckles and the price they would have brought if they had been sold separately from the pencil holders. It is manifest that the defendant would not have sold the 9,361 gross of pencil holders if it had not attached them to the patented buckle, or to some other buckle which would have satisfactorily supplied its place as an adjunct of the holder. The proofs indicate that other buckles, which were open to public use, could have been attached to the holders, but the organized device would have been a clumsy and unattractive one, while the patented buckle was peculiarly adapted for the purpose, and was the part which commended the organized device to purchasers. The master found that the patented buckle was "the best and only known buckle that could have sold pencil holders, and no part of the profits would have been made except for it." It is reasonable to suppose that the defendant's managers would not have exposed it to liability as an infringer if they had believed that some other buckle, which they were at liberty to use, would have answered the purpose of the patented buckle as an adjunct of the holders; and, notwithstanding some evidence to show that it would, and that the spring buckle plate, an unpatented feature added to the buckle, contributed to its popularity, we are satisfied upon the proofs that the master was correct in his finding, and that there would have been no appreciable demand for

the holders if they had not been attached to the patented buckle. The license in fixing such a large royalty upon the buckle when sold with the holders points also to this conclusion. In his opinion disposing of the master's report, the learned judge in the court below did not discuss the finding of fact that, but for the use of the buckle, the buckle and holder would not have been a marketable device; but in his opinion rendered upon granting the interlocutory decree it is stated that the patented buckle was "apparently the only practicable solution of the problem presented," which was to devise a lever buckle having characteristics, among others adapting it to be used for carrying a pencil holder. In disallowing the profits upon the combined buckle and lever, he did so apparently in deference to the rule that, where the articles which have been made and sold by the infringer contain not the patented invention alone, but other inventions or improvements, the profits for which he is to account are not the total profits, but those only which are attributable to the presence of the patented invention. This has always been the rule, and it is manifestly a just one upon principle; but it is often difficult of practical application, and the courts have sometimes applied it so that it has not produced an equitable result. In many cases, where it is obvious that the patented invention has contributed a great part of the profits realized from selling the infringing article or apparatus embodying unpatented features, it is practically impossible for the complainant to establish affirmatively the proportionate part. The present case is an illustration. None of the patented buckles like those attached to the pencil holders, those of the third claim of the patent, were ever sold to an extent and under circumstances to establish satisfactorily their market price. No pencil holders detached from the buckles were ever sold, and no competent and reliable evidence can be produced to show what part of the profits the defendant derived from the buckles and what part from the holders separately. According to the estimate of the complainant's principal witness, which the master finds to be an "intelligent estimate of a man of large experience in the cost of all such details," the cost of the buckle was about $1.02, and of the buckle and pencil holder $1.71 per gross; and it is undisputed that the combined article was sold at the price of $5.08 per gross. The master thought this estimate of cost too liberal for the defendant, and he found the total cost of the buckle and pencil holder to be $1.62½, and upon this basis the profits of the defendant would be $32,342. Upon either estimate the cost of the buckle was more than two-thirds of the cost of the whole article. It was certainly the dominant feature of the whole article, and no one can doubt that it contributed much more to the entire profits than did the holder. Yet there is no way by which the complainant can establish the proportion. As the rule has been applied in some of the adjudged cases, there could be no recovery against the infringer. In such a case it would seem to be reasonable to require the infringer to account for the whole profits, even though it could not be proved that the commercial value of the article was wholly due to the patented feature. An infringer is a trustee ex maleficio for the owner of the exclusive rights protected by the patent; and a trustee who has

confused the profits made by the use of the trust property with those made from his own property, and commingled them so that they cannot be segregated, must account for the whole. Lupton v. White, 15 Ves. 432; Hart v. Ten Eyck, 2 Johns. Ch. 108; Central Nat. Bank v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693. On the other hand, such a rule would work unjustly in many cases,—as where the patented feature is of an insignificant part of the machine or article; and it is probably because of its manifest inequity in such cases that the courts have placed upon the complainant the burden of proof. Thus, in Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, where the patent was for an improvement in a mop head, and the defendant sold mops which contained the patented improvement, but otherwise were the common unpatented article, it would have been unreasonable to permit the complainant to recover the profits on the entire mops; and, because he had not given evidence to apportion the profits between the patented features and the other features of the mop, the court decided that he had not established any basis for the recovery of profits. The court in that case quoted with approval the proposition stated in the following terms:

"The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features, and such evidence must be reliable and tangible, and not conjectural and speculative; or he must show by equally reliable and satisfactory evidence that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine as a marketable article is properly and legally attributable to the patented feature."

The present is a case where the defendant would not, and, as we think, could not, have made any profits from manufacturing the holders if it had not used the patented buckle to command a sale for them; and upon the facts is within the second branch of the rule stated in Garretson v. Clark, and within other authorities sanctioning a recovery of the total profits derived from the sale of an infringing article embodying unpatented features, when, but for the patented features, it would not have been a marketable article.

In Manufacturing Co. v. Cowing, 105 U. S. 255, 26 L. Ed. 987, the court, after adverting to the rule that the profits for which an infringer is liable are to be determined by the advantage which he has derived from using the patented invention beyond those he might have derived in using other instrumentalities open to the public, and adequate to enable him to obtain an equally beneficial result, said:

"It does not necessarily follow from this that, where the patent is for one of the constituent parts, and not for the whole of a machine, the profits are to be confined to what can be made by the manufacture and sale of the patented part separately. * * * If the improvement is required to adapt the machine to a particular use, and there is no other way open to the public to supply the demand for that use, then it is clear that the infringer has, by his infringement, secured the advantage of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market. * * * Through their infringement they won the advantage of selling pumps which had upon them the patented improvements. Without it, no such sales would have been effected. The fruits of the advan-

101 F.—9

tage they gained by their infringement were, therefore, necessarily the profits they made upon the entire sale."

In Hurlbut v. Schillinger, 130 U. S. 456–472, 9 Sup. Ct. 584, 32 L. Ed. 101, the court held the infringer liable for the entire profits made by the laying by him of concrete flagging. It is self-evident that concrete flagging would be of more or less value if it were not laid according to the method of the patent which was infringed; but the court said that if it had not been laid that way it would not have been laid at all; and that its entire value as a marketable article was properly and legally attributable to the invention.

In Crosby Steam Gauge & Valve Co. v. Consolidated Safety-Valve Co., 141 U. S. 441–453, 12 Sup. Ct. 49, 35 L. Ed. 309, the court held the infringer liable for the entire profit made from making and selling safety valves containing the patented improvement, for the reason that the entire value of the valve, as a marketable article, was properly and legally attributable to the patented feature.

The rule that the complainant is entitled to the whole profits when it appears that, but for the patented feature, the machine or article made and sold by the infringer would not have been a marketable commodity, was recognized in Mosher v. Joyce, 2 C. C. A. 322, 51 Fed. 441, and in Holmes v. Truman, 29 U. S. App. 572, 14 C. C. A. 517, 67 Fed. 542.

It is doubtless true that, except for the pencil-holder attachment, the buckles would not have been sold; but that circumstance is quite immaterial. The buckles were sold, and therefore the defendant must account for whatever profits were attributable to their sale. It is also immaterial that a spring bearing plate was superadded to the patented features of the buckle of the defendant, as we are satisfied the organized device did not derive its commercial value to any appreciable extent from that addition, and would have sold as readily without it. We are of the opinion that the master gave too much weight to the circumstance of the destruction by the defendant of some of its books of account, and, because of its failure to "prove conclusively" all the items of the cost of the manufacture, was led to adopt a lower estimate of cost than he otherwise would. The proofs do not warrant the inference that the books were destroyed for any illegitimate purpose. The estimate of the cost made by the complainant's principal witness, in view of his apparent candor and intelligence, commends itself to us as more reliable. In his estimate, however, he places the cost of the brass used at 34 cents, the cost of mounting the articles upon the cards for sale at 10 cents, and omits the cost of forming the blank for the pencil holder. In respect to these items we regard the estimate of the witnesses of the defendant as more accurate, according to which the cost per gross of the brass was 43¼ cents, the cost of mounting 14 cents, and the cost of forming the pencil holder 3 cents. Making these corrections, the cost of the pencil holder and buckle per gross was $1.91½. Profits should therefore have been allowed to the complainant in the sum of $29,627.

We think the defendant's fifth assignment of error is well taken.

This relates to the profits allowed upon certain buckles other than those of the sizes and combination sold with the pencil holders. They were sold chiefly to the garter and suspender trade, and had a short lever attached to the upper end to fasten the buckle to the strap. This was an unpatented feature. It was also open to the defendant to substitute another base plate for that of the patented combination, and thus make a buckle which would probably have been as useful and as salable. In the buckles of this class the profit resulting from the sales was only such as is measured by the difference in value between the patented combination and others open to use by the defendant. That profit was not satisfactorily established by the evidence.

There should be a decree for the complainant for $29,627, with interest from the date of the master's report, and to that extent the decree is reversed, with costs to the complainant, and the cause is remitted to the court below, with instructions to modify the decree in conformity with this opinion.