DUNN MFG. CO. et al. v. STANDARD COMPUTING SCALE CO.

(Circuit Court of Appeals, Sixth Circuit. March 13, 1913.)

No. 2,294.

1. PATENTS (§ 318*)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.

On an accounting for profits in an infringement suit, where the infringing article sold by defendant was that of the patent, with a patented improvement on which defendant paid royalties, the amount so paid does not of itself constitute such a segregation of profits attributable to the use of the improvement as to leave all the remaining profits necessarily attributable to the invention infringed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

2. PATENTS (§ 318*)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.

Whether the fact that the entire structure made and sold by an infringing defendant is included in the combination claims of the patent requires it to account for all of the profits made thereon, without proof and a finding of the fact that the sales were due to the presence of the feature which distinguished the patented device from the prior art—quære?

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*

Accounting by infringer for profits, see note to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8.]

3. PATENTS (§ 328*)—INFRINGEMENT—COMPUTING CHEESE CUTTER.

The Dunn patent, No. 800,431, for a computing cheese cutter, held not infringed by a device made and sold by defendant, as changed after a decree holding its former device to be an infringement, and the bearing of the fact that such change avoided infringement on the computation of profits recoverable for the former infringement considered.

4. PATENTS (§ 27*)—INVENTION—DOUBLE USE.

Where a given mechanical structure is devoted to a new manner of use, employing a function which is distinct from its old function, though inchoate in and developable therefrom, this may show invention, rather than mere double use, although the only physical change is appropriate remarking.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. § 27.*]

5. PATENTS (§ 322*)—ACCOUNTING—DAMAGES AND PROFITS.

If, upon an accounting, no established royalty appears, should the master ascertain and report what a reasonable royalty would be—quære?

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. § 322.*]

Appeal from the District Court of the United States for the Eastern District of Michigan; Alexis C. Angell, Judge.

Suit in equity by the Dunn Manufacturing Company and others against the Standard Computing Scale Company. On appeal by com-

plainants from final decree awarding nominal damages only for infringement of patent. Reversed.

V. H. Lockwood, of Indianapolis, Ind., for appellants.

E. N. Pagelsen, of Detroit, Mich., for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and COCHRAN, District Judge.

DENISON, Circuit Judge. After the opinion of this court, sustaining the Dunn patent, No. 800,431 (163 Fed. 521, 90 C. C. A. 331), the usual interlocutory decree for complainants was entered below and an accounting had. Complainants waived damages. It appeared that defendant had embodied in its market structure not only the patent infringed, but also, under a royalty contract with one Osborn, an improvement thereon patented to the latter. After the decree, defendant changed the form of its device, and claimed that it thus avoided infringement. Complainants insisted that the change was not material. The master declined to go into any inquiry after the change in form. Defendant's total net profits were found to be about $18,250, leaving out of account $4,250 which it had paid to Osborn for his royalty. The master considered this royalty to be defendant's statement of the portion of its profits properly apportionable to its use of the Osborn patent, held that the remainder of the profits was attributable to the infringement, and reported a finding for complainants of about $14,000. The District Court thought the complainants had failed to sustain their duty of apportionment, and (in November, 1911) gave judgment for nominal damages only. Complainants appeal.

This case reaches this court in so nearly the same general situation as was the Westinghouse Case when it reached the Supreme Court (Westinghouse Co. v. Wagner Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222) that we think it should be disposed of in the same way. The decree will be reversed, with costs, and the record remanded, with instructions that the master's report be vacated and a new reference made, in the conduct of which the parties and the master will have the benefit of this opinion by the Supreme Court.

[1] This result necessarily implies our disapproval of the master's conclusion that the amount paid for royalty on the Osborn improvement, constituted, of itself, such a segregation of profits attributable to the use of that improvement as to leave all the remaining profits necessarily attributable to the presence of the Dunn invention. There cannot be any presumption that a manufacturer contracts to pay, as royalty to a patentee, a sum equal to all the profits which the manufacturer expects to derive from the use of the invention. The ordinary inference, as of the date of the royalty contract, must be otherwise. Royalty payments are rather, from the manufacturer's standpoint, a part of the cost of construction, and from the standpoint of the patentee, whose dominant patent has been infringed, such royalty might or might not, according to the facts of the case, be considered an element of cost.

[2] In support of the master's report, it is also urged upon us that the article, patented to complainant and manufactured by defendant, was an entirety; that the five elements of the claim, recited as constituting a combination, make up the entire market structure; and hence that all the profits on that structure flow from the infringement, and that there is no occasion for any apportionment of profits by either party. This argument assumes that the rule of necessity for apportioning profits, and all the difficulties arising thereunder, pertain only to a case where a patented combination is a part of, or an attachment to, a more extensive structure, and that, where the defendant's sale is of a structure comprising only the combination of the patent, the defendant must, ipso facto, account for all the profits received on the sale. This view is plausible, as a matter of original reasoning, and finds support in statements made by several courts, and in some things said by this court;[1] but we do not think it has ever been intended to establish this proposition as a general rule. (For a carefully distinguished application, see Orr v. Murray [C. C. A. 7] 163 Fed. 54, 89 C. C. A. 492; and for discussion of analogous problem, see Schmertz Wire Glass Co. v. Western Glass Co., 203 Fed. 1006.) In any broad application there seems to be conflict with the familiar rule that profits or damages should be measured by comparison with the thing which defendant had the right to make (McCreary v. Pennsylvania, 141 U. S. 459, 12 Sup. Ct. 40, 35 L. Ed. 817; Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263), and with the other equally common rule that the entire profits cannot be awarded, as of right, without proof and finding of the fact that the sale was due to the presence of the feature which distinguished the device from the prior art (Wales v. Waterbury [C. C. A. 2] 101 Fed. 126, 41 C. C. A. 250; Westinghouse v. New York [C. C. A. 2] 140 Fed. 545, 72 C. C. A. 61). Even where a device is an improvement added to, and a part of, a more extensive structure, the operative association of the larger structure is usually implied, and often expressed, in the claims of the patent. An improvement in the governor of a steam engine might well be formulated:

"The combination of a boiler, a steam engine, the connecting supply pipe, the throttle," etc.

This is an extreme illustration, but the question of profits can hardly depend on the largely fortuitous language of the claim in extending the combination, instead of on the actual advance in the art. It is enough to say at present that in this respect the instant case cannot be distinguished from the case in 225 U. S. There, also, a combination claim covered all parts of the entire structure manufactured and sold by defendant, excepting some additions claimed to be improvements, and, if an apportionment of the profits was there necessary, it is here required.

[3] Upon examination of the present record, we think it also re-

---

[1] NOTE.—Yesbera v. Hardesty, 166 Fed. 120, 92 C. C. A. 46, is cited to this effect. In that case defendant's conduct was such as to prevent apportionment and to require the result reached.

quires that we should determine whether the changed form avoids infringement, and this not only because we ought, as far as we safely can, to end the controversy now, but also because the sales of and profits from the new form, if it is not an infringement, are claimed to have important bearing on the matter of profits attributable to the infringement. To make clear the merit of our proposed disposition of this question, a further statement is necessary; and this must be regarded as supplementary to the statement and discussion contained in the opinion upon the former appeal.

The subject-matter of the H. F. Dunn patent in suit was a computing cheese cutter, called a "total value" cutter. The cheese rested upon a rotating table, and a knife, swinging vertically on its fixed support, would cut from the cheese a "pie-shaped" piece, the base width of which would be determined by the amount which the table had rotated since the last cut. Rotation was imparted to the table by a vertical lever, pivoted at one end under the edge of the rotating table, having a handle at the outer, free-swinging end, and connected to the table by such gearing, that a movement of the lever in one direction would cause the table to rotate for a distance corresponding to the length of the lever stroke, while the reverse movement of the lever would be inoperative. In this way the continued reciprocating motion of the lever would give a step by step rotation to the table, and the length of the arc step would correspond to the length of the lever stroke, and would be positively regulated, first, by the proportional gearing selected in the construction; and, second, by adjusting the length of the permitted lever stroke. In connection with this lever arm, there was provided a scale bar, constructed upon the arc of a circle struck from the lever pivot, and lying alongside the sweep of the lever. This scale bar was graduated and marked with numerals, so as to indicate desired subdivisions of the distance; and the gearing was so proportioned that a sweep of the lever from nothing to the highest numeral would rotate the table for the fraction of its circumference indicated by the highest numeral, or for the fraction half as large, or one-quarter as large.

For example, if the numeral at the forward end of the lever stroke was 15, the gearing was so proportioned that a stroke of the lever to that point would move the table either one-fifteenth, one-thirtieth, or one-sixtieth of its circumference, according as the lever-table gearing was proportioned one to one, one to two, or one to four. It follows that, if the numerals are assumed to indicate pounds, a 15-pound cheese would be cut into 15 one-pound pieces, 30 half-pound pieces, or 60 quarter-pound pieces, according to the selected construction; and, accordingly, these cutters, of the second or third form, have been commercially designated as half-pound cutters or quarter-pound cutters. A stop, sliding on this scale bar and capable of being fixed at any point, limits the length of the stroke, and so locates what is, for the time being, the highest numeral. A cheese would be put on a scale, and found to weigh, for example, 18 pounds. It would then be placed on the rotating table, the stop on the scale

bar would be set at eighteen, and the device would automatically measure off half-pound or quarter-pound slices.

It seems that retailers, particularly in some parts of the country, had calls, not for quarter-pound or half-pound slices, but for 5-cent slices or 10-cent slices, and it was plain enough, when once pointed out, that such a cutter would apportion total price into fractions as well as total weight into fractions. In other words, if the total desired selling price was $3. and the stop was set at the numeral 30, the device would deliver either 30 or 60 pieces, according as it was of the one for one or two for one type, and at the $3 total price these would be 10-cent pieces or 5-cent slices. After this observation of the principle involved, it is also plain enough, when stated, that if we have a scale bar where the numerals represent pounds, and where the device will cut half-pound slices, and if we then assume that the numerals indicate dimes, and set the stop at any particular numeral, the cheese will be cut into twice as many pieces as there are dimes in the numeral—that is, into 5-cent slices. If we add a cipher, and so change the dimes into cents, and a decimal point and make dollars, we have a total value scale bar. If the stop is at 30, representing pounds, we will get 60 half-pound pieces, and if the stop is set at the same place, representing 30 dimes, or 300 cents, or $3, we will get 60 5-cent slices.

All this, except as will be pointed out, was well known before the H. F. Dunn invention. Roth, by patent No. 657,621, of September 11, 1900, in a device for this purpose and of somewhat similar construction. and which was proportioned four to one, had a rod with two scale bars, one marked with numerals representing pounds, and the other marked with registering numerals indicating dollars, but, owing to the four to one proportion, the dollar numerals are twice as large as in the two for one example which we have above given; that is to say, opposite the numeral 25 was the mark $5.00; opposite 34 was the mark $6.80, etc. Speaking of the second scale bar, Roth says it "is graduated and marked to indicate the total value or total selling price of various cakes of cheese"; and "to illustrate, a 40-pound cheese, at 10 cents per pound, would be worth $4, or the same as a 20-pound cheese at 20 cents a pound. Hence, if the cheese is to be sold by price, the measuring wheel should be set at the $4.00 mark on the scale"; and again, "it matters not what the weight and price of a cheese may be, so long as the cheese is worth $4, inasmuch as, for 10 cents, for instance, a purchaser should secure one-fortieth segment of a cheese."

F. P. Dunn, by his patent No. 790.564, considered in the former opinion, had alongside his operating lever an arc scale bar graduated with numerals assumed to represent the total weight of the cheese, and adapted to cut on the four to one basis, or quarter-pound pieces. He assumed that the selling price is 20 cents per pound, and that he has a 12-pound cheese, and then says that setting his stop at the numeral 12 "will cause the cheese-carrying table B to move through one forty-eighth of the complete revolution, so that a 12-pound cheese may be divided into 48 pieces, which at 5 cents each, would amount,

to $2.40, the price of a 12-pound cheese at 20 cents per pound." Having thus shown that his device, with the stop set at 12, was a "total value" 5-cent cutter for a $2.40 cheese, and not stating, and probably not observing, the simplicity of the relationship by which multiplying by 20 (the number of nickels in a dollar) any numeral on his scale bar would convert this numeral into the des'red total selling value in cents, and thinking that the computation involved was too difficult for the mental powers of the average clerk, he provided a mechanical aid for such computation. This consisted of a slide rule, which he mounted in the machine under the table, but which might as well or better have been entirely separate from the device, since the rule had with the table no co-operative mechanical connection or relation whatever. He said that this was, in principle, "the well-known slide rule, in which the scales are logarithmic, and the operations of multiplying and dividing are performed mechanically." It was used by adjusting one point to indicate the weight of the cheese in pounds and another point to indicate the selling price per pound, whereupon the third pointer would indicate, normally, the total selling price in cents, and thereupon the operator would divide this by 20 to find the scale bar numeral at which he should set the stop in order to apportion this selling price into 5-cent fractions; but F. P. Dunn made his slide rule perform this division also, and so his third pointer indicated, not selling price in cents, but the desired scale bar numeral.

H. F. Dunn, by the patent in suit, observed the simplicity of the relationship above mentioned. He saw that all which was accomplished by F. P. Dunn's sliding scale was to ascertain the total selling price, and then apply such total selling price to the existing weight numerals on the scale bar by dividing by 20 (or, of course, in the half-pound cutter, by dividing by 10). He saw that this was the same thing as converting the weight scale bar into a total value scale bar by multiplying the existing numerals by 20, or by 10, and calling them cents. While it is quite true, therefore, that, mechanically speaking, H. F. Dunn did nothing, except to add a cipher to the F. P. Dunn scale bar numerals and throw away or forget F. P. Dunn's independent, mechanical aid to the clerk's problem in arithmetic, yet he did, for the first time, produce something which F. P. Dunn did not have, and probably had not comprehended, viz., a total value scale bar which would automatically cause the cutting of 5-cent pieces when the stop was set at the marked "total value." It is true, also, that Roth had disclosed this ultimate result, but by an apparatus not so simple. It was this new result, accomplished by the simple mechanism of both the Dunn patents, which this court held constituted invention and made the patent valid. We have elaborated this situation only to make its bearing clear on the further facts now involved.

Before the former opinion, defendant had been making, among other styles, a cutter containing both the common weight bar of the earlier art and the total money value bar of the H. F. Dunn patent. Since the opinion was rendered, it has continued to make the same device, without the money value scale bar, and, upon its other forms,

it has substituted the old and common weight bar for its money value bar. It has then sent, with its machines, a circular of instructions explaining how the weight bar, without any change whatever, can be used as a total value bar, to cut 5-cent slices, by assuming that each numeral on the weight bar indicates dimes. These instructions are based upon the principles and theory which we have explained, and which had been vaguely apprehended by earlier inventors, and which H. F. Dunn had clearly seen, and had embodied in his apparatus, and had somewhat imperfectly explained in his patent. We find, then, that in this new form defendant uses exactly the mechanism of the F. P. Dunn patent, adding nothing whatever and subtracting only the slide rule, which was in truth no part of F. P. Dunn's operating mechanism. For this slide rule defendant substituted pencil and paper in the hands of the clerk. It is thus clear that defendant's new form, accompanied by its card of instructions, cannot be held to infringe the H. F. Dunn patent, without holding that there would also have been infringement thereof by operating the earlier F. P. Dunn patent, for its intended use and in a manner in which it was capable of being operated without even the slightest mechanical change; and this conclusion would be fatal to the validity of the H. F. Dunn patent.

[4] It seems rather a strange result that the patent law should allow liberty to use, or should prohibit the use of, a given mechanical structure according as one part of it is marked with one or another kind of numerals; yet this is the necessary result of our previous decision, and of the facts which now clearly appear. Not only are we under a more or less absolute obligation to adhere to the former decision, but under these peculiar facts we are satisfied with that decision. The total value bar and the weight bar are not functionally the same thing, though one function is inchoate in and developable from the other; and the thought that the work of these computations and these transpositions could be avoided, and their result displayed in figures on the face of the bar, so producing a ready-made total value cutter, instead of somewhat raw materials for one, we consider was, in fact, invention, and not merely double use, even though the only physical change involved was the remarking appropriate to the convenient use of the newly developed function. Defendant, in its newer cutter, has abandoned the "ready-made" total value bar, and gone back to the "raw materials."

If the profits for which defendant is liable are to be assessed by a comparison with the profits which they "would have had in using other means open to the public" (Coupe v. Royer, supra), it is manifest that this accounting presents an unusual problem. A determination based on any technical rule of burden of proof and on the unintentional default of one or the other party would be unfortunate; and the circumstances strongly indicate that neither an award of all the profits, nor an award of none, would be substantial justice. Upon the new accounting, some clear measure of the profit actually due to the invention may appear, as, perhaps, would be the comparative

profits on a cutter having only the weight bar and an otherwise equivalent cutter having both weight and value bars.

[5] Further, if, upon the new accounting, complainants wish the inquiry to cover both profits and damages, so that, after the facts are fully developed, they may choose which to pursue (so far as any election may then be necessary), the master should, in addition to the usual facts on that subject, ascertain and report whether there was any fixed and established royalty, and, if not, then what would be a reasonable royalty upon each machine for such use of the invention as defendant made. We do not intend to intimate that such reasonable royalty would be in any event a proper measure of damages, but only to have the facts so completely found that this question might be open to consideration.