### HERMAN v. YOUNGSTOWN CAR MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1914. On Application for Rehearing, October 14, 1914.)

#### Nos. 2597, 2612.

L. PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE—CONSTRUCTION OF PATENT.

Where the real invention of a patent consists only in the improvement of one element of a combination, although the claims describe the entire combination, it must be construed with regard to the real invention in determining its validity and scope and also the extent of liability for in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fringement, and profits derived from the sale of the complete device by an infringer are prima facie to be apportioned.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

2. PATENTS (§ 318*) — ACCOUNTING FOR INFRINGEMENT — APPORTIONMENT OF PROFITS.

The profits made by an infringer from the sale of a device for making blueprints embodying the invention of the Herman patent, No. 777,096, held apportionable on an accounting for the infringement, and complainant held entitled to recover one-half of the entire profits.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

3. PATENTS (§ 318*) — INFRINGEMENT — ACCOUNTING FOR PROFITS — COST OF MANUFACTURE.

On an accounting for profits for infringement of a patent, the defendant held entitled to credit as a part of the cost of production for royalties paid to a later patentee of improvements under whose patent defendant manufactured.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*

Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

4. PATENTS (§ 323*)—SUIT FOR INFRINGEMENT—RELIEF.

In a suit for infringement, a decree for damages or profits cannot be rendered, covering a period after the defendant had in fact turned its business over to one not a party.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 596–599; Dec. Dig. § 323.*]

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Ohio; William R. Day, Judge.

Suit in equity by Reinhold Herman against the Youngstown Car Manufacturing Company. From the decree after an accounting, both parties appeal. Affirmed on complainant's appeal, and modified on defendant's.

In No. 2597:

T. A. Connolly, of Washington, D. C., for appellant.

C. E. Brock and Melville Church, both of Washington, D. C., for appellee.

In No. 2612:

C. E. Brock and Melville Church, both of Washington, D. C., for appellant.

T. A. Connolly, of Washington, D C., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. When this case was here on the former appeal, we held (191 Fed. 579, 112 C. C. A. 185) that six out of the eight claims sued upon were either invalid or not infringed, but we sustained the validity and found infringement of claims 12 and 13 of patent No. 777,096. Upon the subsequent accounting in the court below,

no effort was made to recover damages as distinguished from profits. The master found that the defendant, the Youngstown Company, was liable for the entire profits which it had realized, and, in stating these profits, he refused to credit to defendant the payments which it had made to Wagenhorst, the later patentee under whose patent defendant was manufacturing. On exceptions, the District Court affirmed the master's conclusion that defendant was liable for the entire profits, but reversed the master as to the Wagenhorst payments, and held that they were properly to be taken as part of the expenses of manufacturing. Both parties appeal. Herman will be called "plaintiff"; the Youngstown Co., "defendant."

The patent had reference to a device or structure for making blueprints by artificial light. It consisted of a glass cylinder around the outside of which were exposed the sensitive paper and the negative, backed by an opaque curtain, facing inwardly, and on the inside of which an electric arc lamp was caused to be lighted for a suitable period. The cylinder was vertical and the electric light, suspended from above, was passed slowly and steadily down through the axial line of the cylinder. Of course, a suitable supporting frame was necessary to keep the cylinder and light and their various appurtenances in proper mutual relation. It is apparent, from our previous opinion, that the invention as to which patentability and infringement were found had reference only to the means provided for causing and regulating the desired downward motion of the lamp. This is illustrated by claim 12, which reads:

"12. In a printing apparatus the combination of a printing cylinder suitably mounted, an electric lamp, electric connections with said lamp, a liquid cylinder, and hollow piston rod operating in said liquid cylinder and means whereby the hollow piston rod is automatically raised by the counterbalance weight of the lamp, substantially as described."

[1] 1. It is first said that the device in question is a unitary thing, all parts of which are called for by the claim; that the claim is to a combination which is an entirety; and that the defendant's device was the same combination and the same entirety; and hence that all the profits flowed from the infringement and all must be paid over. Leaving out of view for the moment the effect of the presence in the defendant's machine of the additions or improvements covered by the Wagenhorst patent, there is plausibility in this contention, and it finds apparent support in our decision in Yesbera v. Hardesty, 166 Fed. 120, 92 C. C. A. 46; but we do not construe that decision as intended to reach a case like the present. It is true that the patent there was for a combination the elements of which, perhaps with one exception, were old; but the essential point of that case is that the combination, as an entirety, was a new thing and created a new demand rather than being a mere improvement on or addition to an old thing, making merely an increased or a different demand. The thing really invented was the complete folding seat, and it was rightly held that profits should be considered with reference to that new thing and not with reference to its old elements. In the present case, the terms of the claim furnish analogy to Yesbera v. Hardesty, but the similarity goes no farther. Generally similar printing devices were old. Nothing was new, except

the means governing the descent of the lamp. Except for the artificial rule of the Patent Office which requires a claim to include a completely operative combination (and very likely, in spite of that rule), this invention could properly and accurately have been formulated and claimed as "an improved lamp-controlling means for a printing apparatus, consisting of, etc." In determining the liability for profits, as well as in determining validity and scope, we must give due regard to the real invention—the real contribution or step in advance which the patentee has made—and the due effect of this consideration should not be obscured by the language in which the claim is clothed. We pointed this out in Dunn v. Standard, 204 Fed. 617, 619, 123 C. C. A. 111, 113, saying:

"The question of profits can hardly depend on the largely fortuitous language of the claim in extending the combination, instead of on the actual advance in the art."

And it is made additionally clear by the discussion in Seeger v. American (D. C.) 212 Fed. 742, 748, 749. We therefore conclude that, for the purpose of awarding profits, defendant's structure is not to be treated as merely and only an embodiment of plaintiff's invention; and it follows that an apportionment of the profits derived from the sale of that structure is prima facie necessary.

[2] 2. Nor can it properly be said that the entire profits belong to plaintiff merely because his invention was an essential part of the thing sold. The proofs show, as would be apparent enough, that a lamp-controlling device was absolutely necessary, and that, without it, no sales could have been made; but it does not follow that the sales were due to the use of plaintiff's particular form. Other lamp-controlling means were open to defendant, and still others were used by its competitors. There is no evidence showing part played by the patented invention in inducing sales. So far as the evidence indicated anything, it is to the effect that other features distinct from plaintiff's invention were the "talking points" which sold the machine against its market competition.

3. Can the profits be apportioned? Plaintiff recognizes his initial burden to show the negative of this proposition (Westinghouse v. Wagner, 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. [N. S.] 653), and claims to have discharged the burden by calling, as his witness, Mr. Young, defendant's manager, who testified that there were no bookkeeping data from which could be made up any accurate statement of the portion of profits attributable to the liquid cylinder; but he further testified that in his opinion the defendant's machine should, for this purpose, be divided into its component parts, and the profits apportioned equally to each part. His method of division was to say that the glass cylinder, the curtain, the supporting frame and the lamp with its connections, each constituted, for this purpose, one-fourth of the machine; that 25 per cent. of the profits should be apportioned to each; and that this portion attributed to the lamp and connections should be again subdivided into four parts with 6¼ per cent. to each—viz., the lamp, the electric wires, the automatic cut-out, and the hydraulic cylinder. This being the state of the record, we are

confronted with the question how far Westinghouse v. Wagner is parallel and how far inapplicable to the present situation. We do not find in that case any broad rule that a patentee is entitled to all the profits in every case where his device is a part of a larger structure and where the fraction of profits attributable to the invention cannot be mathematically demonstrated. The converter invented by Westinghouse was of the class of the folding seat in Yesbera v. Hardesty; it was an integer; the invention, through the rule of combination, extended to every part of the whole structure which defendant marketed. Even in a case of that class, it does not follow, from anything decided, that the apportionment must be precisely accurate; nor that intelligent expert estimate may not furnish all necessary certainty. In a case of the other class, where the entire composite structure is fairly resolvable into component parts, with some of which the patented invention has no connection, except by way of furnishing the environment in which the invention becomes useful—in a case of that class, the recovery of those profits which did not pertain, except so remotely, to the invention of the patent, must be required by an imperative legal rule before it can satisfy the conscience. In a case of that class, the semi-independent parts may each involve substantially the same cost of material and labor and may each contribute equally to the final marketability. In that event, an equal division of the profits among these parts is both arbitrary and reasonable; arbitrary, because of its form, but reasonable, because obviously fair and just. Into what parts the market device should be, for this purpose, divided, will be for the court, upon inspection of the structure and consideration of the field of invention; whether the parts, so ascertained, do bear this mutual relation or any other mutual relation which permits profit division is a question of expert knowledge; and a man of experience in the manufacturing and selling field can form thereon an intelligent and useful opinion.

Whether, in the absence of any helpful opinion, the court should presume the propriety of such equal division need not be decided; in this case, the witness Young was thoroughly qualified, the theory and effect of his testimony are that the situation justifies apportionment by division, and we think ourselves justified in adopting that view.

We do not, however, agree with the witness as to the proper separation to be made. The structure itself speaks. The marketed device really consists of two main parts, to one of which the invention pertains and to the other of which it is incidental: The glass cylinder or printing frame and its connections and appurtenances constitute one part; the lamp and its connections and appurtenances constitute the other. One is the means for giving out and controlling the rays of light which do the printing; the other is the means for receiving and giving effect to the light rays. The supporting frame is partially incidental to each of these two natural divisions. It follows that, in the absence of any conditions making an equal division improper, and in the presence of the undisputed testimony that this general method is correct, the profits should be divided into two equal parts, one of which should be apportioned to the light-giving part of the device.

Further than this, we cannot go. We cannot subdivide this function of the machine. The lamp itself, the electric wires, the automatic cut-out, and the controlling hydraulic cylinder are all elements of one thing—the light-producing means—and no intelligible theory of separation is presented or is apparent. Here, the theory of resolving the device into parts is not applicable, for these parts are so inherently interdependent and all so joined in contributing to one function that they, for that purpose, must be thought of as an indissoluble unit.

It follows that plaintiff was entitled to one-half and to only one-half of the profits.[1]

[3] 4. The District Judge was right in allowing credit for the Wagenhorst payments. The defendant was a corporation. Wagenhorst, a stranger, had a patent upon his improvements in this machine, and he interested defendant. It agreed to manufacture and market the machine, and to give him, as compensation for the use of his patent and for some general supervision and technical assistance by him, one-third of the profits. This was done. The business was carried on by the corporation under the trade-name Wagenhorst & Co., but this was merely an arbitrary name. Wagenhorst had no voice or control in the business, and he was not, in any fair sense, a partner. We think these payments were not a division of profits among joint infringers, but were as truly a royalty as if they had been called by that name and had been paid according to a regular schedule per machine. Such royalty payments, when the inquiry concerns profits actually received by the defendant, are entitled to be considered part of the cost of production. Elizabeth v. Pavement Co., 97 U. S. 126, 141, 24 L. Ed. 1000.

[4] 5. Pending this suit, the defendant corporation discontinued all active enterprises, and Mr. Young, personally, by an informal but effective transfer, took over and continued the blueprinting machine business. He conducted it under the same name, Wagenhorst & Co., and in the same way. Plaintiff asks a decree against him personally for the profits on the machines which he built and sold after the defendant ceased operations. He is not a party to this case. Such a decree is impossible. The fact that the public had no notice of the change in individuals doing business as "Wagenhorst & Co.," is immaterial. This is not an action by one who gave credit in reliance on the appearance of things, and who may invoke the rule of estoppel. This is, in its present stage, an effort to recover a sum of money wrongfully received by the defendant in this case.

In No. 2597, the decree is modified so as to award one-half the sum fixed by the District Court; but with interest from the date of that

---

[1] We do not regard our conclusions in paragraphs 1 and 3 as inconsistent with what is decided in Brennan v. Dowagiac, 162 Fed. 472, 89 C. C. A. 392. Whether the invention of the patent, by reason of the form of the claim, pervades the entire commercial structure so that the structure becomes the thing patented and nothing else, is to be determined in each case according to the facts of that case, and not merely from the face of the patent but from the entire record. The same thing is true regarding the question whether the patent itself or the oral evidence or both justify dividing the structure into parts and apportioning the profits among these parts. In the Brennan Case, there was no occasion to consider any such division.

decree. In No. 2612, the decree below is affirmed. In each case, the Youngstown Company will recover costs.

## On Application for Rehearing.

PER CURIAM. The application for rehearing calls attention to an undoubted error in the opinion. It is there said that plaintiff sought a personal decree against John P. Young, who is not a party to the cause. This is a misstatement of plaintiff's position. He sought to have his decree against the corporation cover profits which had not been received by the corporation, but by Mr. Young after the corporation went out of business, and while business was continued by Mr. Young, but under the same old trade name. The transfer of the business was clearly proved; it was a good-faith transaction, and the corporation is not liable.

Plaintiff also asks that we permit, or that we direct the court below to permit, the filing of a supplemental bill, or such other amended pleading as may be thought proper and sufficient to include Mr. Young, and to warrant a final decree against him for the profits derived by him personally. It is urged that the joinder of the corporation and Young in one case would be proper, because he personally instigated and directed infringement by the corporation, and was personally liable, and that it would be proper in one accounting to hold him personally for all profits, corporate and individual, and to hold the corporation for what it had received. Without determining this question, or whether the settled rules will permit the desired new pleadings, or will compel the filing of a new bill, the court below will be directed, within such reasonable time as it may fix, to receive and consider such application of this character as plaintiff may make, and with the same force and effect as if the application had been made on the final hearing before the court on exceptions to the master's report.

The application for rehearing is denied.