## VAN KANNEL REVOLVING DOOR CO. v. UHRICH et al.

### UHRICH et al. v. VAN KANNEL REVOLVING DOOR CO.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1924.)

### Nos. 6266, 6267.

1. Patents ⬅328—656,062 held patent for improvements on earlier standard revolving door, and not for revolving door as an entirety.

   Patent No. 656,062, for revolving doors, *held* a patent for improvements on earlier standard revolving door, and not for a revolving door as an entirety.

2. Patents ⬅318(1)—Infringer is a trustee ex maleficio, required to hold profits in trust for patentee.

   An infringer is a trustee ex maleficio of all the profits he derives from his manufacture and sale of the infringing device, and is required so to conduct his business and so to keep his accounts that those profits can be with reasonable certainty separated from the profits of his other business and clearly shown, and to hold such profits in trust for and to pay them over to the patentee.

3. Evidence ⬅318(3)—Testimony based on record entries hearsay, in absence of testimony as to correctness of entries by persons who made them.

   Where persons who kept records did not testify that entries therein were correct, testimony based on such entries was hearsay.

4. Patents ⬅312(3)—Evidence held to sustain master's finding as to damages in action for infringement.

   In action for infringement of patent No. 656,062, for improvements in revolving doors, evidence *held* to sustain master's finding as to damages.

5. Patents ⬅319(3)—Allowance of $500 as increased damages for willful and persistent infringement held not abuse of discretion.

   Allowance of $500 as increased damages for willful and persistent infringement *held* not abuse of discretion.

6. Patents ⬅319(3)—Allowance of increased damages for willful and persistent infringement discretionary with court.

   Allowance of increased damages for willful and persistent infringement of patent, under Comp. St. §§ 9464, 9467, is discretionary with the court.

7. Costs ⬅13—Awarding of costs in equity discretionary.

   In an equity suit, the power is vested in and the duty is imposed on the trial court to exercise its judicial discretion in the award of costs.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Patents ⊜325—Adjudging that costs be paid in equal proportions by complainant and defendants held not abuse of discretion.**

In an action for infringement of patent, in which the complainant claimed that it was entitled to all the profits defendants made from the manufacture and sale of revolving doors which infringed patent, on theory that patent was one for a revolving door as an entirety, and defendants claimed that complainant was entitled merely to part of the profits derived from the patented improvements, on theory that the patent was merely for improvements to an earlier standard revolving door, the court, in finding for defendant as to the nature of the patent and the measure of damages, and in allowing complainant such damages, did not abuse its discretion in adjudging that the costs of the suit be paid in equal proportions by complainant and defendants.

**9. Equity ⊜394—Rule as to allowance of compensation to masters, referees, etc., stated.**

Courts should be sedulous to keep allowances to masters, referees, examiners, and other officers within just and reasonable limits, and to avoid all excessive and unnecessary expenses in the administration of justice, and in making allowances should consider the character of the duty imposed, and the ability, knowledge, experience, and learning requisite to the discharge of that duty.

**10. Equity ⊜394—Allowance of $3,500 to special master in patent infringement case held not abuse of discretion.**

In suit for infringement of patent, allowance of $3,500 as compensation to special master, who was an eminent, able, and experienced lawyer, and whose report disclosed long, patient, and efficient judicial work and a citation of authorities *held* not abuse of discretion.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the Van Kannel Revolving Door Company against Oscar W. Uhrich and Burns H. Uhrich, doing business under the name and style of the Atchison Revolving Door Company. From the judgment rendered, both parties appeal. Affirmed, as modified.

Titian W. Johnson, of Washington, D. C., and Charles F. Newman, of Ft. Scott, Kan. (James G. Sheppard, of Ft. Scott, Kan., on the brief), for Van Kannel Revolving Door Co.

Richard H. Hill, of Louisville, Ky. (T. Kennedy Helm and Trabue, Doolan, Helm & Helm, all of Louisville, Ky., on the brief), for Uhrich and others.

Before SANBORN, Circuit Judge, and TRIEBER and MUNGER, District Judges.

SANBORN, Circuit Judge. In a suit brought by the Van Kannel Revolving Door Company, a corporation, hereafter the complainant, against Oscar W. Uhrich and Burns H. Uhrich, doing business as the Atchison Revolving Door Company, defendants, the court below on May 22, 1917, decreed that the complainant was the owner of letters patent No. 656,062, for improvements in revolving doors; that the defendants had infringed claims 1, 2, and 8 of that patent; that they were enjoined from continuing that infringement, that Hon. W. P Dillard, of Ft. Scott, Kan., was appointed a special master to ascertain and report to the court the number of doors sold by the defendants in violation of the complainant's rights, the gains and profits the defend-

ants received or made by infringing those rights, and the damages the complainant suffered from such infringement.

The parties produced their evidence before the special master, who filed his report on October 15, 1921. Each party filed exceptions to that report, which were argued before and ruled by the court below, and upon these rulings it rendered its final decree on May 25, 1922. From this decree the complainant and the defendants have appealed, and presented to this court and it has considered the following objections to the decree and the rulings of the court upon which it is based:

The complainant asserted that its patent No. 656,062 secured to it the panic-proof automatic revolving door described in the specifications and claims of that patent as an entirety, and that it was entitled on that ground to recover all the profits the defendants made from its manufacture and sale of doors which infringed upon that patent. Herman v. Youngstown Car Mfg. Co., 216 Fed. 604, 132 C. C. A. 608; Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000. On the other hand, the defendants insisted that the complainant was not entitled on that ground to recover all the profits the defendants made from the sales of the infringing doors, because the complainant's patent did not secure to it those doors as entireties, but only the improvements on the earlier revolving doors, which, when embodied in the standard revolving doors, made them panic-proof automatic revolving doors, and that only a part of the profits the defendants made by the sales of the infringing doors was derived from the patented improvements. Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 614, 615, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 645, 35 Sup. Ct. 221, 59 L. Ed. 398. The master and the court below found that the patent was not for the panic-proof automatic revolving door of the complainant as an entirety, but was for the improvements to the earlier standard revolving door, which, when embodied in the infringing doors, made them panic-proof automatic revolving doors.

The evidence on this issue is conflicting. It has been carefully read and considered. Mr. Sunderland, a witness for the complainant, briefly described the standard revolving door in use before the complainant's patent and the panic-proof automatic revolving door of the complainant in these words:

"There are two types of revolving doors on the market; the standard type in which the revolving wings are held in a radial position by rigid brace arms, which may be released manually, and the automatic collapsible panic-proof type, in which the revolving wings are held in radial position by flexible bronze cables, so fastened to the wings that the wings may be collapsed when undue pressure is applied to any or all of the wings."

Theophilus Van Kannel, who procured to himself the patent in suit, declared in the introductory paragraph to his specification for this patent that he had invented "certain improvements in revolving doors, of which the following is a specification." In that specification he declares that his invention consists of:

"Certain improvements in that class of revolving doors which have a series of radiating wings rotating in the casing, the object of my present invention

being to so construct the wings and casing of such a door that they will yield to the rush of a panic-stricken crowd, the end portions of the casing swinging outward and the wings of the door all being pushed to the front, so as to provide a wide and unobstructed passage on each side of the center of the door structure."

And his first claim is:

"The combination in a revolving door of a structure mounted so as to be revolvable around a central axis in fixed radial relation thereto, said wings having also independent hinges so disposed that all of the wings may be folded and lie side by side so as to project in one direction from the center."

[1] In view of the conflicting testimony of the witnesses, these declarations of the patentee and the findings of the master and the District Court that this patent was not for the complainant's revolving door as an entirety, but was for the improvements upon the previous standard revolving door, the record in this case fails to convince that there was any error of law or mistake of fact in this finding.

The master found, first, that the defendants made and sold 102 infringing doors and realized profits therefrom to the amount of $7,638.66; and, second, that the defendants by their methods of bookkeeping, by their negligence and by their conduct in the transaction of their business, had made it impossible to separate and apportion such profits between the infringing and the noninfringing parts of those doors, and that, under the rule in Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 618, 620, 621, 622, 32 Sup. Ct. 691, 56 L. Ed..1222, 41 L. R. A. (N. S.) 653, the complainant was entitled to the entire profits. The court below conceded the correctness of the first finding, but was of the opinion that it was possible to separate the profits derived from the infringing from the profits derived from the noninfringing parts of the doors made and sold by the defendants, and upon that ground, after a consideration of the evidence, reduced the amount allowed to the complainant on account of the defendants' profits from the manufacture and sale of the infringing doors from $7,638.66 to $545.11. The complainant assigns this ruling and reduction as error.

The court below made this reduction because in its opinion the complainant was estopped from recovering all these profits, because its panic-proof automatic revolving door was not patented as an entirety, and because, in the opinion of the court, the evidence before the master sustained its conclusion that the part of the profits which the defendants derived from the manufacture and sale of the complainant's patented improvements taken separately did not exceed $545.11.

[2] But an infringer is a trustee "ex maleficio" of all the profits he derives from his manufacture and sale of the infringing device, and the duty rests upon him so to conduct his business and so to keep his accounts that those profits can be with reasonable certainty separated from the profits of his other business and clearly shown, and it is his duty to hold those profits in trust for and to pay them over to the cestui que trust, the patentee. Wales v. Waterbury Mfg. Co., 101 Fed. 126, 129, 130, 41 C. C. A. 250; Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 610, 618, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653.

The improvements patented to the complainant were novel, valuable, and practicable. They evidenced a meritorious invention, and the patent to them has been universally sustained. Van Kannel Revolving Door Co. v. Revolving Door & Fixture Co., 219 Fed. 741, 746, 135 C. C. A. 439, decided December 15, 1914; Louisville Trust Co. v. Van Kannel Revolving Door Co., 231 Fed. 166, 168, 145 C. C. A. 354, decided March 7, 1916; Van Kannel Revolving Door Co. v. Lyon & Healy, 247 Fed. 329, 159 C. C. A. 423, decided August 23, 1917.

The defendants were willful and persistent infringers. They put out their first infringing door in 1909, and they continued their infringement until the term of the patent expired in 1917. They experimented with and tried different types of infringing devices, which they used as one after the other of them was held by the courts to constitute an infringement of the complainant's patent, and expended and lost much money on types that were inefficient, by the use of which they sought to evade the complainant's patent. Although constantly infringing, although informed of complainant's patent and claims, although during the later years unsuccessfully defending suits thereon, they never kept any separate books or other accounts of the cost of the material, labor, or other expenses of their manufacture of the infringing parts of the doors they made and sold, but mixed those costs with the costs of the other parts of the doors and of their other manufactures.

The court below deduced its conclusion that the amount allowed to the complainant by the special master on account of the profits made by the defendants should be reduced to $545.11 from evidence produced by the defendants. That evidence is founded on the general theory that the complainant is not entitled to receive any larger percentage of the profits which the defendants derived from the manufacture and sale of the infringing doors they made than the cost to the defendants of the parts of those doors which infringed the complainant's patented improvements bore to the cost of the entire doors. On this theory the defendants' witnesses, with the aid of the account books of the general manufacturing and sales business of the defendants, proceeded to testify to the respective costs of and profits from the infringing parts of the doors they made and sold and the entire costs of and profits from such doors. But the various infringing devices they used were crude, evasive and inefficient. The testimony of these witnesses is largely based on their estimates and opinions, and the result deduced from it by the court seems so inequitable that we are not convinced that the amount allowed to the complainant on account of the defendants' profits by the special master was either illegal, unjust, or inequitable.

The standard revolving door before and without the patented improvements of the complainant was subject to the latent danger and handicap that, in case of a rush of people from fire, panic, or other scare, to pass through it, the crowd might and frequently would stop its revolution, hold it fast closed, and thus prevent any escape through it. Many attempts had been made to invent a device that would remove this threat and handicap and provide a revolving door for the free and safe use of rushing, panic-stricken people. The complainant

finally discovered, invented, and brought into practical use and sale such a device, and by his patent secured to himself the exclusive right to its use and sale. That device consisted in so constructing and securing the wings of the revolving door, normally locked to a central post in fixed radial relations by self-releasing locking devices, that, upon the presentation of abnormal pressure upon one or all of the wings, they would be automatically unlocked and swing forward side by side, leaving two free passage ways for a panic-stricken crowd. This invention provided a new use and a new market for revolving doors, a use and a market of which the standard revolving door without this new device could not lawfully avail itself or supply. Nor was there during the term of the complainant's patent any other device or way open to the public of which the defendants or others could lawfully avail themselves to supply this new use or this new market, and the complainant's patent vested in him the exclusive right to this new use and to this new market which the patented device created.

"If the improvement" says the Supreme Court in Mfg. Co. v. Cowing, 105 U. S. 253, 255 (26 L. Ed. 987) "is required to adapt the machine to a particular use, and there is no other way open to the public of supplying the demand for that use, then it is clear the infringer has by his infringement secured the advantage of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market." Carborundum Co. v. Electric Smelting & Aluminum Co., 203 Fed. 976, 981, 983, 122 C. C. A. 276; Metallic Rubber Tire Co. v. Hartford Rubber Works Co. (D. C.) 245 Fed. 860, 862, 863; Hurlbut v. Schillinger, 130 U. S. 456, 472, 9 Sup. Ct. 584, 32 L. Ed. 1011.

The market for the standard revolving door which did not include the patented safety improvements of the complainant was open to the defendants. But the market for the panic-proof automatic door in which the complainant's patented improvements were embodied was not open to them. That market could not be supplied by the standard door; it could not lawfully be supplied in any other way than by the use of the patented improvements. The owner of the complainant's patent had the exclusive right to that market, and to the profit derived from every door that supplied it, and complainant was entitled in our opinion to a decree for the $7,638.66, which the defendants derived from the sale of the revolving doors that infringed upon that patent, and unlawfully deprived the complainant of the profits from the sale of a like number of the doors embodying his patented improvements in the new market, which those patented improvements had created.

[3, 4] The complainant, in addition to the profits made by the defendants, claimed that it sustained damages caused by the necessary reduction of its prices on some 39 sales of panic-proof automatic doors caused by competitive bids therefor made by the defendants based on their infringing doors. After hearing the evidence upon this claim, the master in his report took up each of these 39 claims, one by one, reviewed the testimony regarding each one of them, and found that the complainant had suffered damages claimed on 9 sales of these doors, amounting in the aggregate to $2,136.50. The defendants excepted to

this finding, the court below overruled their exception, and they now challenge this ruling. Their counsel complain that the master received, over their objections and exceptions, hearsay testimony upon this question of damages, and that when such testimony is laid aside there is no substantial evidence to sustain his finding. A careful reading of the record dicloses the fact that some of the testimony of the complainant's witnesses was hearsay, because it was based on entries in the complainant's books and records, and the writers of those books and records did not come into court and testify that those entries were correct and disclose the facts. But this was only a part of the complainant's evidence. In the course of the hearing the complainant presented a schedule which purported to state, among other things, the 9 sales upon which the master and the court based their finding, the complainant's original bids therefor, the competitive bids of the defendants therefor, the lower contract prices at which the complainant was forced to sell the doors, and the losses it sustained on each sale. One of the defendants subsequently testified that the defendants bid on each of these sales, and that the complainant's statement in this schedule of some of the defendants' competitive bids was correct, so that the claim that the defendants made bids to furnish these doors was not without substantial evidence to sustain it, and, upon a careful consideration of all the evidence upon this subject, in the light of the fact that the master and the court below after an examination thereof were of the opinion that it sustained their finding, we are unable to conclude that they fell into any material error of law, or made any substantial mistake of fact in their conclusion here.

[5, 6] The master found that the defendants were willful and persistent infringers, and on that account he allowed an increase of $500 damages to this complainant. The court affirmed that finding, and each of the parties assign it as error. The complainant insists that the allowance is too small; the defendants, that it is too large. The evidence leaves no doubt that the defendants persistently and willfully infringed the complainant's patent; but the allowance is not such as to indicate any abuse of the judicial discretion which was vested in the court below to fix the amount of this increase, and the assignments of error to it are therefore overruled. U. S. Compiled Statutes, §§ 9464, 9467.

[7, 8] The special master recommended:

"That of the remaining cost of the reference, including an allowance to C. B White, the first named master, and the balance of compensation to be allowed the present master, be awarded and adjudged against the parties, one-third against plaintiff and two-thirds against defendants, each to be credited with the amount already paid as above stated."

On an exception to this recommendation by the defendants, the court below adjudged that the costs of this suit be paid in equal proportions by the complainant and the defendants respectively. The complainant assigns this ruling as error. But in an equity suit the power is vested in and the duty is imposed upon the trial court to exercise its judicial discretion in the award of costs, and we discover no error of law or abuse of that discretion in this ruling. It is therefore affirmed.

297 F.—24

[9, 10] By its final decree the court below allowed to the special master as compensation for his services $2,500, in addition to $1,000 which had previously been paid to him. The defendants excepted to that allowance, and contend that it is excessive to the amount of at least $1,500. Courts should be sedulous to keep allowances to masters, referees, examiners, and other officers within just and reasonable limits, and to avoid all excessive and unnecessary expenses in the administration of justice. In making allowances to such officers, the character of the duty imposed upon the appointee and the ability, knowledge, experience, and learning requisite to the discharge of that duty should be considered. The services of a learned and experienced lawyer, appointed and competent to take the testimony and state the account of the profits derived by an infringer of a patent, and the damages inflicted upon the owner of the patent by the infringer, in such cases as that in hand, conditioned as such an account and statement are by the rules of law and practice evidenced by the decisions of the Supreme Court of the United States, may not be obtained for the compensation proper for the services of a clerk, a notary public, or an examiner to take and report testimony. And the court that selects and appoints such a master may allow him compensation commensurate with his ability, experience, and fitness for the task assigned to him and commensurate with the importance and difficulty of his work and the responsibility it imposes upon him. The sixty-eighth equity rule empowered the District Court below to appoint the master in this case and provided that:

"The compensation to be allowed to every master shall be fixed by the District Court, in its discretion, having regard to all the circumstances thereof, and the compensation shall be charged upon and borne by such of the parties as the court shall direct."

This rule, it will be noticed, gives the authority and imposes the duty, not upon the appellate court but upon the District Court, to exercise its judicial discretion in fixing the compensation of its master, although undoubtedly the appellate court may and ought to correct any abuse of that discretion. The special master in this case was an eminent, able and experienced lawyer. His report discloses long, patient, and efficient judicial work. It contains clear and positive findings, a statement of his reasons for them, and a citation of the authorities which in his opinion sustain them, and, in our opinion, this record discloses no abuse of its discretion by the court below in fixing the compensation for his services.

Let this case be remanded to the court below, with instructions to modify the final decree, by substituting for the words and figures, "the sum of $545.11," in paragraph (8) thereof, the words and figures, "the sum of $7,638.66"; by substituting for the words and figures, "the sum of $3,298.25," in paragraph (11) thereof, the words and figures, "the sum of $10,634.69." Let the decree, when so modified, be affirmed, and let the Van Kannel Revolving Door Company, the complainant below, recover its costs in this court in each of the appeals.