### ARMSTRONG v. BELDING BROS. & CO.

(Circuit Court, D. Connecticut. January 17, 1910. On Rehearing, April 21, 1910.)

#### No. 1,217.

PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE.

On an accounting for profits made by an infringer of the Schroeder patent, No. 546,251, for "a thread package consisting of a folded casing embracing the skein," the defendant is liable only for the enhanced price received for the silks when sold in the infringing package.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

In Equity. Suit by Benjamin L. Armstrong against Belding Brothers & Co. On motion to instruct master on accounting.

See, also, 172 Fed. 234.

Gifford & Bull and Ernest L. Chadwick, for plaintiff.

Robert B. Honeyman, for defendants.

PLATT, District Judge. This matter has by an interlocutory decree gone into the hands of a master to take an accounting of the profits and damages resulting from the infringing sales of the patented article, and the hearing before him has been halted in order that the court may be asked to advise him as to the method which he shall pursue in reaching his conclusions.

Such a request is very unusual; but, since it has been made, it is probably better that I should state my views about the duties of the master now, rather than to remain silent until the final hearing. The fact that I do so must not be deemed to indicate even the slightest lack of confidence in the ability and good sense of the master, and I am sure that he would have reached the same result that I have, without this memorandum as a guide.

The defendants have trespassed upon the Schroeder patent, No. 546,251. The vital and controlling point is to decide what the invention covered by that patent is. True it is that the patentee calls it an improvement in skein thread holders; but he proceeds to tell how he makes it, and then says that, after placing the skein on the core, he incloses or wraps it in an envelope of paper "forming a long, slender, and nearly flat tubular package" (lines 63 and 64), leaving only the ends of the thread exposed and affording means for identifying the thread therein. After an exceedingly minute description of the way his invention is prepared for operation, he proceeds to claim "a thread package, consisting of a folded casing embracing the skein. * * *" He claims a unitary structure, made up of a folded casing with the thread in it. He also claims a casing folded according to his ideas; but the central underlying thought is the thread package, as defined in the claim.

We do not need to consult the dictionaries to learn about a package. The patentee himself tells us what his "thread package" is. A folded casing which did not embrace a skein would be a hollow mockery, and the patentee certainly did not confine himself to so limited an invention as that would be. If the defendants have sold 4,800,000 infringing packages, they should be held to account for the profits upon those packages.

The same conclusion would be reached if the invention were limited to the holder, without the silk thread incased therein. That patented holder was a necessary adjunct to the actual sale of the individual skeins. It is not impossible that those skeins might have been sold to somebody in hanks or loose lots; but they could not have been sold as they were sold, except by the help of the holder. The holder dominated and controlled the sale of each individual skein. The prin-

ciple of Wales v. Waterbury, 101 Fed. 126, 41 C. C. A. 250, has a compelling force and effect in the present situation.

From either view of the case, it is transparently clear to my mind that the defendants ought to be compelled to pay to the plaintiff whatever profits they received upon the infringing packages they sold, just as they sold them, silk and all.

## On Rehearing.

Before and since the infringing sales a very large share of the defendants' sales of embroidery silks were made in loose lots or hanks of their own manufacture. There is force in the contention that the only profit resulting to them from the sales by means of the patented packages was the enhanced price received for silks sold in that way. The law seems to be plain that the infringer of a combination patent must pay the profits made upon the elements which enter into the combination. At the same time, if one of the elements has an established wholesale market price, it is not clear that such price should not be made the basis upon which that element should be figured.

It must be remembered that we are not discussing the question of damages. If the Brainerd & Armstrong Company were the complainant, and could show that the defendants had invaded their market and captured their customers by the infringing sales, they would probably be entitled as damages to what they could have made in the way of profits upon the sales which they had lost. But it is a different story when we come to the contemplation of Armstrong as the complainant. What could he have done with his patent? He could manufacture under it, or buy his embroidery silks from a manufacturer, or license some one to use his patent.

So far as the record shows he has licensed the Brainerd & Armstrong Company to use the patent. If complainant had manufactured under his patent, he might have lost money. Whether or not he would have lost is uncertain and speculative. If he had bought the silks and put them in the patented package, he would have been compelled to pay the company the manufacturer's profit; and in such event he could not expect to get from the defendant its manufacturing profit on silks which he did not sell, nor, so far as we know, could have sold. At this point we are brought directly back to the question of damage, which is not in the case.

This brief memorandum will indicate that the reargument of the motion asking me to instruct the master as to his duties on the accounting has left my mind in a sufficient state of uncertainty, so that I deem it wise to change my suggestions as contained in the memorandum filed March 3, 1910, and advise the master to follow the plan outlined by counsel for defendant. I do this with more satisfaction than I had hoped to feel, because it will enable the master to make an early report, and, if the complainant continues to be as sure of his rights as he now appears to be, the higher court can soon put him back upon the track, and the consummation which he looks for will then arrive in due season. In such event the work already done will not be lost. The delay will be only a temporary one, and no great harm will have been done to any one.

The other course is so drastic that I hesitate to enforce it without positive authority from the court which has so lately passed upon the Hemolin Case, 166 Fed. 434, 92 C. C. A. 186. If these hurried words leave the master in any doubt as to the course which I think it better for him to follow, he must feel himself at liberty to ask me any further question which he deems essential.