## BYERLEY v. SUN CO.

### (Circuit Court of Appeals, Third Circuit. January 19, 1911.)

### No. 35.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ASPHALTIC PETROLEUM PRODUCTS AND PROCESS OF MAKING SAME.

The Byerley patent, No. 524,130, for a process of making artificial asphalt by the further distillation of the residuum from the ordinary distillation of petroleum, and for the product itself, was not anticipated and discloses invention; also *held* infringed as to both process and product claims.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by Francis X. Byerley against the Sun Company. Decree for complainant (181 Fed. 138), and defendant appeals. Affirmed.

Augustus B. Stoughton and J. Parker Kirlin, for appellant.

W. K. Richardson and Harrison F. Lyman, for appellee.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

BUFFINGTON, Circuit Judge. In the court below Francis X. Byerley brought suit against the Sun Company, charging infringement of patent No. 524,130, issued to him August 7, 1894, for "manufacture of asphalt, etc., from petroleum." On final hearing a decree was entered adjudging the patent valid, and product claim 2, and process claims 1, 3, 6, 7, 8, 9, and 10 infringed. From such decree the Sun Company appealed to this court.

After a thorough argument by counsel and a patient examination of the record and briefs, we are satisfied the decree below must be affirmed. In the exhaustive opinion of the judge below, which is reported at 181 Fed. 138, the case is gone into so fully that an additional one by this court could but be a mere repetition. We therefore limit ourselves to briefly recording the conclusion to which a study of the case has impelled us.

The art, as Byerley found it, is fairly stated in his specification in these words:

"In the manufacture of petroleum products, it has been customary to distill the crude oil in externally heated stills, so as to drive off the naphtha and the burning oil, with more or less of the heavier oils, leaving a residuum or tar which can be further distilled, if desired, down to a solid body. As the distillation of the petroleum residuum or tar has heretofore been com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

monly conducted, it has resulted, when pushed to the production in the still of a body which is solid in the still or which solidifies on cooling, in the formation of a coke or a coke-containing pitch."

Byerley's invention consisted of a process which in the further distillation of the tar residuum avoided the formation of a coke, or coke-containing, pitch and produced an artificial asphalt. From the proofs we are clear that this transformation from tar to asphalt is a chemical action or process, and that such chemical action is wrought by agitated air raised to a high temperature; water being formed from the air and oil in the still. This chemical action affords a basis for a process claim.

We have also reached the conclusion that no anticipation of Byerley's process is shown. It would seem the nearest alleged approach was a patent of Jenney; but this patent started with sludge oil and its product was resin. "My invention," says Jenney, "consists of a new process of treating this sludge oil to manufacture a resinous substance." Without entering into the details of Jenney's process, it suffices to say that in the purification of hydrocarbon oils produced by the distillation of crude petroleum Jenney agitated with concentrated sulphuric acid in order to remove certain oils contained in the distillate. The sulphuric acid combined with these oils and the tarry substances and formed a dark red, heavy liquid. This settled and formed sludge oil, a product which was thrown away. Jenney's process and Byerley's were addressed to different problems. Byerley's product was asphalt; Jenney's, resin. Byerley's was black, while Jenney's was light, shading from yellow to a dark garnet red, and the chemical constitution of the products obtained by blowing Jenney's purified sludge oil is different from that of the product obtained from blowing Byerley's tar residuum. So much for the product, which is the subject of the second claim.

The other claims are addressed to the process, which in substance consists in making asphalt by the prolonged exposure of petroleum tar in a still to so high a temperature as to be pitch-forming, but still non-coking, with the introduction of air into the residuum, or, as stated by respondent's own expert:

"The Byerley process consists in the treatment of petroleum tar in such a manner which will, when agitated by air, result in the production of asphaltic products. During the agitation with air, a pitch-forming, non-coking temperature is maintained."

As to this product and process we agree with the conclusion of plaintiff's expert, who says:

"I find nothing in the patents which have been cited by the defendant to indicate that any one ever made the Byerley product by his process from any material until Byerley made his invention."

Indeed, the prior art had no teaching on the subject, and Byerley discovered it, not by any process of reasoning or building upon former methods, but accidentally and without design. Byerley on one occasion and from mere curiosity carried the distilling process beyond the usual point, and to his surprise found it resulted in an unlooked-for and unknown chemical action and product, namely, the artificial

asphalt of his second claim. We think, also, the court below rightly held, for the reasons by it stated, the respondent infringed.

As to the further contention, now made in this court, that respondent avoids infringement by using Texas oil, which it is alleged is asphaltic oil to begin with, we are of opinion that, assuming this to be the case, the respondent by the use of Byerley's process still obtains Byerley's asphaltic product; and while it may not in distilling Texas oil use the Byerley process to the limit required when Lima oil is used, it nevertheless makes use of the Byerley process, in that it agitates by air, and uses a pitch-forming, non-coking temperature, and obtains a product of artificial asphalt.

The decree of the court below is therefore affirmed.