BYERLY v. SUN CO.

(District Court, E. D. Pennsylvania. September 23, 1915.)

No. 201.

1. PATENTS ⬤⟲318—INFRINGEMENT OF PROCESS PATENT—PROFITS RECOVERABLE.

On an accounting for profits made by the use of an infringing process, complainant is entitled to have taken into account all products of value resulting from the use of the patented process, whether there is a product claim in the patent or not.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⬤⟲318.]

2. PATENTS ⬤⟲312—INFRINGEMENT—ACCOUNTING FOR PROFITS—EVIDENCE.

On an accounting for profits made by an infringer, where profits are shown by complainant, the inferences from other evidence, necessarily within the control of defendant, as to their amount or cost of production, are justified in favor of complainant, where, if incorrect, that fact can be readily shown by defendant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ⬤⟲312.]

3. PATENTS ⬤⟲318—INFRINGEMENT OF PROCESS PATENT—ACCOUNTING FOR PROFITS.

In finding the value of the raw material used by an infringer of a process patent, for the purpose of ascertaining his profits, the cost of such material to defendant, and not its value at the time of use, is to be taken.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⬤⟲318.]

4. PATENTS ⬤⟲318—INFRINGEMENT—ACCOUNTING FOR PROFITS.

The good will gained by a defendant through its infringement of a patent is not an element to be valued and charged against him on an accounting for profits.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⬤⟲318.]

In Equity. Suit by Francis A. Byerly against the Sun Company. On exceptions to master's report. Overruled, and report confirmed.

H. F. Lyman, of Boston, Mass., Charles Chauncey Savage, Jr., of Philadelphia, Pa., and Fish, Richardson, Herrick & Neave, of Boston, Mass., for plaintiff.

Robert D. Eggleston, of New York City, Francis S. McIlhenny, of Philadelphia, Pa., Edmund Wetmore, of New York City, and John G. Johnson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The parties to this contention have each filed exceptions to the report of the master. The deserved compliments which have been bestowed upon the master for the ability displayed in the consideration and discussion of the matters submitted to him and the fullness with which he has applied that ability to the performance of his duties, as well as the thoroughness of his investigation, lead to the expectation of a finding of the correctness of the conclusions reached. On the other hand, as this is an inquiry into the amount of profits made in a manufacturing venture from the use

of a process employed in securing a special product, a finding of about 25 per cent. profit flowing from the use of this process alone and a claim of still greater profits prompts an inquiry into the methods by which this result was reached.

The plaintiff vindicates the justness of his claim on the ground, broadly stated, that by his process a hitherto wholly worthless residuum is transmuted into a product of great commercial value, and that the profits are measured by the gross value of this product, lessened only by the cost of applying the process and marketing the product. The defendant, on the other hand, maintains that this large and, as it views it, inordinate profit has been found by crediting the plaintiff with the value of products with which his process was not concerned, by assuming profits which did not appear, and by ignoring the value of the material to which the process of the plaintiff was applied, as well as by underestimating the expense of production.

The present controversies arose out of the use by defendant of a patented process claimed by the defendant. The plaintiff thereupon charged the defendant with infringement, and filed his bill, praying, among other relief, for an accounting of the profits which had flowed to defendant from this use. The bill was sustained, and a decree entered for such accounting, followed by a reference to a master to find the amount due.

The claims of the patent were both for a process and a product. The product became known to the trade as "Byerlite," from the name of the plaintiff, in recognition of his discovery of the fact that it could be produced and the process of its production. The defendant called the product of these processes "Hydrolenes," and what had become known as "Byerlite" was called "Hydrolene B." It has a likeness to natural asphalts, in some degree a like use, and in some respects, or for some uses, is of superior utility. The process may be described in general terms as a prolonged subjection under agitation and air exposure of the tar residuum following the partial distillation of petroleum to a heat of such temperature as not to coke, but sufficiently high to form pitch, and so that it will upon cooling, solidify into a mass resembling and having the commercial uses of natural asphalts.

The report of the master is voluminous and thorough-going, dealing fully with all the questions which arose before him. He has reported a list of what he finds to be the infringing products, with the quantities. The list embraces five different products, of which substantial quantities were sold, and one the quantity of which is almost negligible. This branch of the report is made the subject, not only of formal exception, but of most vigorous protest, by defendant, and a large part of the argument of counsel is devoted to its discussion. It is well, therefore, to dispose of it as a preliminary question. It is too clear even to justify its formal statement that, inasmuch as the accounting before the master proceeded in accordance with the mandate of the Circuit Court of Appeals, no hearing can be accorded by either the master or this court to a reargument of what has been thus ruled. For this, of course, counsel for defendant does not ask.

The court, it is true, by its supplemental order, left the master free to determine the value in profits which had accrued to defendant from its trespass upon the rights of the plaintiff. This necessarily followed the decree already made, because the court had not undertaken to find either the quantity or value of either the infringing product made by defendant or of what it had produced through the use of the infringing processes. The reference to the master was for the very purpose of having this ascertained. The result is determined by the findings of fact by the master, and so far as his findings are findings of fact the well-settled practice of the courts does not in this case leave us at liberty to disturb them, in face of the full vindication which they have in this report. Indeed, we do not understand that we are asked to disturb them in this respect. The effort is in the main to convict the master of error, in that he is charged with having included, in his accounting, products beyond the scope of product claim 2 of the patent.

[1] We think the report to be in this feature self-supporting, contenting ourselves with the single observation that the criticism overlooks the feature that the master, in following the directions of the order of his appointment, was bound by the ruling of the court that the defendant had been guilty of infringing both a products claim and patented processes, and that he had found as a fact that the disputed profits which he returns resulted from the unwarranted use by the defendant of the latter. This is made so clear by the master that any enlargement upon the thought is forbidden. If the master be not right in his expressed views upon this branch of the argument, it would follow either that there could be no valid patent claim for a process without a further claim for the resultant product, or that a failure to claim all the possible products invalidated the process claims, except when used to result in the claimed product, and that alone.

We think the cases to which we have been referred justify the view, which would seem to be clear on principle, that a patentee may claim both product and process, or that he may claim either, and that the only effect of confining himself to process claims is that, if another can bring the same product into existence without the use of the patented process, there is no infringement. This we understand to have been the ruling of the court in this very case. The master found written into the order of his appointment the fact that this defendant had infringed the process claims set forth, coupled with the direction to him to find what the defendant had made by its use of the processes, to the use of which the plaintiff had the exclusive right, and neither the master nor this court is at liberty to disregard that mandate, or to find that fact to be otherwise than as so stated. The master was free to find, as it was his duty to do, the money benefit to defendant of such use. This he has done, and there is nothing in this record to justify us in disturbing his findings. In making separate findings of the profits from each of the several processes used by the defendant, the master has done all for the defendant which it could reasonably ask of him, nor do we understand counsel for defendant to ques-

tion this view of the law. The point they make, as we understand it, is that the processes protected by the patent are not processes irrespective of the resultant products, or in this sense processes with products, but a special process resulting in a particular product. As illustrative of the thought (without being intended as an accurate statement of the product of the processes) the process protected by the patent is a process from which "Byerlite," or "Hydrolene B," results, and if some other product results defendant is free to use the process and reap a profit from its use, and is called upon to account only for the "Hydrolene B," part of the product.

The view taken by the master (in which we think he was right) is that he should find the extent to which the patented processes had been used and the net pecuniary benefits received therefrom. Although the validity of the claims and extent to which they are valid (having been passed upon) are beyond the limits of even the propriety of discussion, it is worthy of remark that, in making the point now made, counsel were driven, or at least impelled, to take the position that "the making of artificial asphalts, etc., was old." If this statement is contrasted with the finding by the court that prior to plaintiff's discovery of his process "no artificial asphalt was known to commerce," the danger zone into which the argument of counsel, if followed by the master, would have led him, is brought into plain view, although the two statements, within the scope assigned to each by their respective authors, can be readily seen not to be inconsistent. The added thought of the effect of the limitations written into claim 2, in order to secure its allowance, is a thought which pertains to the decree which it was proper to have entered, and has no place in the discussion before the master, except so far as it is illustrative of the limits of his duty in finding what he has found, to wit, the money returns to defendant from its infringing use of claim 2 product and of the process claims. If the claims of the patent, which were allowed by the Patent Office and found valid by the court, had been limited to the claim of a particular product, such as "Byerlite," and this had been followed by a finding by the court that none of defendant's products, other than "Hydrolene B," were within the scope of the claim, then the charging of defendant with the profits received from other products than the one covered by the patent would have been an error of which we are sure the master would not have been guilty. Inasmuch, however, as the master was directed to state an account, not only of the profits of the sale of the product described in claim 2, but also of the profits from the use of the processes decided by the court to be within the protection of the several process claims, it is clear that the master could not disregard this mandate, but must find as a fact the amount of the gains to the defendant from these sources. This is what he has done, and, in respect to this feature of the case, all he has done. The distinction sought to be drawn between the master finding (what the court had already found) whether the defendant has infringed, and what the rights of the plaintiff were upon which the trespass had been made, and the finding of the money returns to the defendant from the infringement, is one which, in its application, can be easily obscured.

The whole practical situation may, however, be summed up in the observation that under the facts of this case the state of the account would not have been changed had claim 2 of the patent been wholly ignored. The profits which flowed to defendant from the sale of "Byerlite" or of "Hydrolene B," as well as from the sale of all the products with which it has been charged, accrued to it from the use of plaintiff's processes. To restrict the accounting, therefore, to the sale of "Hydrolene B" is in effect to ignore altogether the process claims held valid by the court.

[2] This brings us to another phase of the case presented by defendant's exceptions. "Burden of proof," as a phrase, is not strictly applicable to any criticism of the views of the master in the accounting he has returned, because the master has categorically stated the principle to be that the burden is always upon the plaintiff to show the profits claimed. The question is rather one of evidential weight. In the practical solution of the problem of finding the amount of the profits, the two things are likely to merge and the distinction be shaded out of existence. When the fact of profits has been affirmatively shown, and we come to the ascertainment of the amount, this also must be shown by the plaintiff. The amount of the sales does not indicate it, because this would not justify a finding that the receipts were all profits. When, however, the plaintiff introduces testimony and evidence by which we can trace the process from raw material to marketed product, with its attendant cost, if this is sufficient to justify a finding of the total cost of production, we have evidence from which the amount of the net profits may be determined. What weight certain features of the evidence should have, and to what mathematical results it should lead, depend upon all those considerations which fairly deepen or lessen the impression made. The expression of the resolution of doubts is perhaps not a happy one, because associated in the legal mind with conditions foreign to cases of the character of the present one. Inasmuch, however, as is usually the case, or when, as here, it is one of the conditions of the inquiry, that the evidence must be sought in the opposing camp, and clear proofs are or ought to be within the control of the party to be charged, inferences, which, if unsound, could be readily negatived, are justified in favor of the plaintiff which would not be justified if the measure of proofs was controlled by him instead of the defendant.

Applying the principle to the facts of this case, if the facts, as they appear, justify such a statement of receipts and expenditures as to show the found balance on the profit side, as this balance, if wrong, could be shown to be wrong by evidence of expenditures made by defendant, and as it avers the disclosure of all evidence of expenditures made, the fact that the weight of the evidence produced might be affected by facts which do not appear, because of its inability to produce evidence of what additional cost had been incurred, ought not to cause the mind to hesitate to reach (and in this sense to render doubtful) the inference which would otherwise be drawn.

The justice of this in the present case is emphasized by the fact that although the defendant had not wantonly, or in defiant disregard of

plaintiff's rights, committed the trespass found to have been committed, it did act with notice of plaintiff's claim of right, and that it might be found that it must account for all profits received. If, therefore, it permitted the amount of such profits to be made difficult of ascertainment, it cannot ask to be permitted to reap an advantage from a confusion which it has itself created, but the finding must be made in the best light which the attainable proofs present. Moreover, this branch of the exceptions is based upon a question more academic than real, because the master has in fact held the plaintiff to proofs of profits, and has found what they are from the fair weight of the evidence. No real question of upon whom rests the burden of proof, or in whose favor doubts should be resolved, or whether the doctrine of doubts has any application here, arises out of this record.

The exceptions to the master's calculations of the profits made call for no specific discussion, except in respect to the mentioned difference in the measure to be applied in ascertaining profits derived from the sale of a patented product and from the use of a patented process. The criticism of the master's report in this feature is directed at nothing, unless defendant's contention for the limitation of the product is upheld. If it be, the measure to be applied in the ascertainment of the profits from the use of a process is not the difference between the product value and its cost, but the money advantage flowing from the use of the process as compared with the use of other processes open to defendant, or as compared with the nonuse of the patented process. With this difference of measure of profits admitted on the one hand, and the correctness of the calculations of the master on the other, no change in the statement of the profit and loss account has been shown to result, whichever measure is applied. This follows from the fact that the advantage to the defendant from the use of the processes is the difference between having the product of these processes to sell and having what may be termed the raw material of their manufacture to dispose of. Under the facts of this case, therefore, whichever measure is applied the result is the same.

The exceptions generally, and particularly to the statement of account as returned by the master, impel the making of these observations:

As already intimated, the very large sum of profits, viewed either absolutely or as a percentage of gain, for which the defendant is called upon to account, would prevent any feeling of surprise if it was found on examination to be an overestimate. Impressed with this feeling, we have given, at the cost of much time, a detailed examination to the whole of this voluminous record, and have arisen from its perusal with the conviction that the report of the master is its own vindication, and that no justification exists for disturbing his findings. This latter conclusion is not alone based upon the well-established practice with respect to a master's findings of fact, and that the findings in this report are so well supported, but by the fact that profits have been here shown to exist, and that no other statement of their sum and no better method of their ascertainment appears than that which the master has made and adopted.

[3] The exceptions, both of plaintiff and defendant, directed to the value of defendant's product with which plaintiff's process begins, are exceptions to a finding of fact. Because the master has discussed the evidence and reached a reasoned result does not change the character of the conclusion reached. For the court to make a finding of value is to do that which was referred to the master to be done. Neither the evidential fact, which plaintiff urges, that some of this material was neither used nor sold, nor the other evidential fact that limited quantities were sold at higher prices, of itself controls the ultimate fact of value which the master has found. The difficulties surrounding the subject find an analogue in determining the value of real estate. Many considerations enter into the final finding, but after all the value found is a fact.

It is clear, from all the authorities cited in the master's report and in the briefs submitted, that the master has adopted the proper basis as that of value. The case of Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566, accords with the general current of authority and does not establish a new rule. It is clear that the court, in referring there to the cost of material, was using the word "cost" in the sense of value when purchased by the manufacturer. The method which it commended was the usual practice of so valuing raw material, and not that of following all the vagaries of the market at the precise time of its use. Seabury v. Am Ende, 152 U. S. 561, 14 Sup. Ct. 683, 38 L. Ed. 553, affords another illustration of the wisdom of the rule, instead of denying it. A manufacturer buys material at a price. It may be called its value, or its cost to him. He makes it up into a patented product. It might be that the price of the material had so risen in value that, if he had sold it in the raw, at the time it was used, he would have received more than he received for the patented product. He could not, because of this, deny profits as an infringer. More than this, cost, in the sense in which the plaintiff uses the term, is impossible of ascertainment and impracticable of application in cases of this kind. All of this, however, the master has already made doubly clear.

[4] The position of plaintiff, that defendant is concluded by the inventory figures, is untenable. The only evidential value these had is as a declaration and to the extent to which it is self-disserving. Its value is to be found by the master. Had there been any actual appraisement of the material by the defendant, carrying with it an expression of opinion of its value, the inventory would have had more weight. It was prepared and used for a wholly foreign purpose, and was really entitled to little weight for the purpose for which introduced. However much or little influence it exerted upon the mind of the master was for him to allow. Its appellate value to plaintiff is precisely that of the statement against interest of a party or interested witness, unless, as a matter of law, the defendant is concluded by it. The latter we cannot hold. The claim that the good will gained by defendant through its infringing use should have been valued and charged against it was properly rejected by the master. The objec-

tions to its allowance are, whether controlling or not, too obvious to call for enumeration, and to the mind of the court they are controlling.

The remaining exceptions of plaintiff are characterized by him as minor, and are too numerous to permit of separate discussion. They have, however, had our serious attention. The very full discussion in the briefs of counsel of all the questions involved in this case, as well the large money interests at stake, not only justify, but we feel call for, the full consideration we have given it.

The conclusion reached is that the exceptions should be dismissed, and the report of the master confirmed; and it is so ordered.