## ARMSTRONG v. BELDING BROS. & CO.

(District Court, D. Connecticut. May 8, 1922.)

No. 1217.

1. **Patents 318(4)—Where infringing part alone makes article marketable, infringer is liable for entire profit.**

   Defendant, in a suit for infringement of a patent for a silk skein holder, which used the infringing holder for its product only when it could not make a sale without it, *held* liable for the entire profit made on such packages.

2. **Courts 352—Exceptions to account filed before master not necessary.**

   Where a party files an account before a master, under equity rule 63 (198 Fed. xxxvii, 115 C. C. A. xxxvii), the other party is not required to except thereto, to entitle him to introduce contradictory evidence.

3. **Evidence 78, 178(3), 179(2)—On refusal of defendant to produce records on accounting, and destruction of them by him, secondary evidence is admissible, and presumption is against defendant.**

   Where defendant, on an accounting for profits, refuses to produce its records in compliance with orders of the master and the court, and destroys records which might contain material evidence, the other party is entitled to introduce the best evidence available, and even though it is imperfect, vague, or uncertain, every intendment and presumption is to be made against defendant.

In Equity. Suit by Benjamin L. Armstrong against Belding Bros. & Co. On exceptions to master's report on accounting. Modified and confirmed.

J. Edgar Bull and C. C. Heylmun, both of New York City, for plaintiff.

Robert B. Honeyman, of New York City, for defendant.

THOMAS, District Judge. This matter is again before the court on exceptions to the master's report respecting the accounting. The

case has been in the courts since March 23, 1906, and its history is disclosed in a very lengthy record. See (C. C.) 172 Fed. 234; 174 Fed. 410, 98 C. C. A. 361; (C. C.) 178 Fed. 554; (C. C.) 181 Fed. 173. See, also, order of Judge Platt, dated April 30, 1912; order of Judge Martin, dated October 21, 1913; this court's order, dated October 1, 1915; the order of the master, dated January 5, 1914; certificate of the master, dated January 13, 1914; petition by defendant for mandamus; and the order of the Circuit Court of Appeals, dated April 14, 1915, denying the petition.

[1] The patent is for a "skein thread holder," and, to quote the specification, relates—"to devices by which thread which is usually sold and used in the form of skeins can be kept in such form while in the merchant's stock and while being used, without becoming either tangled or soiled, and without any tendency upon the part of one length of thread, when drawn from the skein, to disturb or disarrange the lengths remaining," and the invention "has been designed more especially for use with what are generally known as 'embroidery silks,' which easily become tangled, and a large percentage of which has heretofore been lost because of the lack of any convenient means for preventing the tangling and soiling."

The patent having been adjudged valid and infringed, the cause was referred to a special master, with instructions to ascertain, state, and report to the court an account of the profits, gains, and advantages which the defendant had received by reason of the infringement. A controversy having arisen between the parties as to the manner in which these profits should be ascertained, the court (Platt, District Judge) instructed the master that the defendant need not account for any profits made by it on the silk which it sold in the infringing holder, as distinguished from the profits which it made on the holder.

In compliance with these directions, the master, on January 23, 1913, filed a report stating that from the evidence he was unable to find that the defendant made any profits from the sale of infringing holders. To this report exceptions were filed by the plaintiff, and, after hearing had, the court (Martin, District Judge) ordered that the accounting be resubmitted to the master, "to ascertain the profits that the defendant received from the sale of silk through, or by the use of, the holders which are covered by complainant's patent and infringed by the defendant. In making this accounting the master will ascertain the cost of the raw silk so used, and the expense of advancing the same in manufacture to embroidery silk in bulk, as well as the expense of packing it in the infringing holders."

The defendant having refused to comply with an order of the master directing it to produce certain books showing these costs, the cause came before this court on plaintiff's motion that the defendant be adjudged in contempt. In denying that motion without prejudice, this court said:

"This ruling of Judge Martin must be taken as the law of the case. The entire value of defendant's infringing package as a marketable article is properly attributable to the invention disclosed in the Schroeder patent, No.

546,251. Westinghouse Mfg. Co. v. Wagner Mfg. Co., 225 U. S. 604, and the authorities therein cited."

The defendant still contends that the measure of plaintiff's recovery is the difference between the market price of skeins in the infringing holders and of skeins in old-fashioned packages. But it is clearly established by the testimony of two of defendant's employees, Schmidt and Crocks, that the defendant sold silk in infringing holders only when it could not have sold it at all if it had not been in such holders, so that all the profit made on the silk thus sold was directly due to the use of the patented holders. This fact brings the case at bar within the rule approved in Wales v. Waterbury Manufacturing Co., 101 Fed. 126, 41 C. C. A. 250; Carborundum Co. v. Electric Smelting & Aluminum Co., 203 Fed. 976, 982, 122 C. C. A. 276; Metallic Rubber Tire Co. v. Hartford Rubber Works Co. (C. C. A.) 275 Fed. 315; Vandenburgh v. Concrete Steel Co., 278 Fed. 607, decided by the Circuit Court of Appeals for the Second Circuit on December 14, 1921; and in many other cases. In the latter case the court said:

"The test is whether the invention of a patent gives the whole value to the infringing device. Obviously it must, in a case where the sale of the article would be impossible without availing of the disclosure of the patent."

Bush & Lane Piano Co. v. Becker Bros., 222 Fed. 902, 138 C. C. A. 382, and Vandenburgh v. Concrete Steel Co. are not to the contrary. There the court refused, in the absence of any evidence, to presume that the patented device sold the entire mechanism of which it was a minor part. Here there is no need to indulge in presumptions. The evidence shows that the entire value of defendant's infringing package as a marketable article is properly attributable to the holder. For this reason, I am still of the opinion that the defendant must account for the profit made on the contents of the infringing holder.

[2] In considering the remaining questions raised by the defendant's exceptions to the master's report, we are met at the outset by the contention that, because the plaintiff did not except to the various accounts filed by the defendant in response to the master's orders, he is concluded by the figures therein contained. With this contention I cannot agree. It is well settled that an account filed under equity rule 63 (198 Fed. xxxvii, 115 C. C. A. xxxvii) merely performs the functions of a pleading, namely, to narrow the issues (In re Beckwith, 203 Fed. 45, 121 C. C. A. 381; Beckwith v. Malleable Iron Range Co. [D. C.] 207 Fed. 848), and that, while it would have been better practice for the plaintiff to file exceptions to the account, it is not required to indicate its dissatisfaction therewith in any particular form (Coffield Motor Washer Co. v. Wayne Mfg. Co. et al., 255 Fed. 558, 166 C. C. A. 626).

I think that where, as here, evidence inconsistent with the figures stated in the defendant's account is received without objection on the part of the defendant, on the ground that no exceptions to the account have been filed, the plaintiff's dissatisfaction with the account as filed is sufficiently indicated. Under the circumstances, the situation is the same as if the plaintiff had excepted to the entire account; that is, the

statements therein contained are not to be regarded as evidence, but merely as admissions on the part of the defendant. The master was entitled, therefore, to base his conclusions, not alone on the figures contained in the accounts filed by the defendant, but also on the evidence introduced by the plaintiff.

[3] The defendant, in compliance with various orders of the special master, rendered accounts purporting to show the number of skeins in infringing holders billed by its factory to its offices in New York and Chicago and to independent sales agencies in other cities, the prices at which they were billed, the prices at which skeins in old-fashioned packages were billed at the same time, in similar quantities and to the same parties, the cost of putting skeins in infringing holders, and the loss sustained by selling skeins in holders. It also furnished a partial list of the sales of skeins in infringing holders made at its New York office, showing the price at which skeins were billed to customers. Although ordered on June 17, 1910, to produce its bills or vouchers showing the prices at which its factory billed holder goods to its various agencies, and again ordered on January 4, 1914, and March 13, 1915, to produce all books, written entries, vouchers, etc., showing sales of silk in holders by the New York and Chicago offices, it neither complied with these orders nor accounted for its failure to do so.

On December 27, 1913, in compliance with an order of the special master, the defendant filed an account purporting to show the cost to it of raw silk during the period of infringement, the cost of advancing the raw silk to the point where it was ready to be inserted in the infringing holder, and the cost of putting the silk into such holder, from which it appeared that it had suffered a loss of $5,431.56 on its sales of embroidery silk in holders during the period of infringement. Thereafter, on January 5, 1914, the master ordered the defendant to produce the books showing these costs.

Upon the defendant's refusal to comply with this order, the matter was again brought before the court, and it was held that the order must be obeyed. On March 13, 1915, the master repeated his order of January 5, 1914. In response to this last order, John R. Emery, an agent of the defendant, made an affidavit to the effect that some of the records called for had never been in existence, and that those which had been in existence were destroyed in January, 1913, when the defendant moved its New York offices; that the defendant manufactured many things other than embroidery silks, that no more than 2 or 3 per cent. of the embroidery silks manufactured by the defendant were ever put into paper holders for sale, and that no separate records were kept with respect to such goods so sold in paper holders.

The destruction, during the pendency of the action, of the books and records of the defendant, which, as defendant must have known, might have a material bearing on the questions involved, if the plaintiff's contention was ultimately sustained, was a circumstance requiring explanation on the part of the defendant; but no explanation was forthcoming. Furthermore, there must have been some records in existence, at least as late as December 27, 1913, from which the defendant ob-

tained the figures contained in the account filed by it on that date. These records should have been produced, or the failure to produce them accounted for.

Because of the defendant's unexplained failure to produce, when ordered to do so, documentary evidence showing what amounts it received from the sale of skeins in holders, and the cost of manufacturing them and putting them in holders, the plaintiff was entitled to prove these facts by the best evidence available, and even though such evidence was imperfect, vague, or uncertain, every intendment and presumption is to be made against the defendant, who might have removed all doubts by producing its books. This rule of evidence is well settled (Jones on Evidence, §§ 17–18a; Hanson v. Eustace's Lessee, 2 Howard, 653), and has been applied in cases of patent accounting (P. P. Mast & Co. v. Superior Drill Co., 154 Fed. 45, 83 C. C. A. 157; Yesbera v. Hardesty Mfg. Co., 166 Fed. 120, 92 C. C. A. 46; Byerly v. Sun Co. [D. C.] 226 Fed. 759).

The master has reported that the net profit to the defendant on the sale of silk in the infringing holders was $95,494.73, and recommended that judgment be entered in favor of the plaintiff for such amount, and the question is whether this conclusion is manifestly incorrect. Fullerton Walnut Growers Association v. Anderson-Barngrover Mfg. Co., 166 Fed. 443, 92 C. C. A. 295; Continuous Glass Press Co. v. Schmertz Wire Glass Co. et al., 219 Fed. 199, 135 C. C. A. 85. It appeared from the accounts rendered by the defendant that during the period of the infringement it billed to its offices in New York and Chicago, and to certain independent corporations and copartnerships which acted as its selling agents in Boston, Baltimore, Cincinnati, and St. Louis, in infringing holders, 4,804,752 skeins, or about 9,384¼ pounds, of embroidery silk, at prices aggregating $111,447.19, or an average price per pound of $11.88. The defendant also furnished a partial list of the sales made at its New York office, showing that on an average the prices at which the holder goods were billed to its customers were $2.64 a pound more than the prices at which they were billed to its New York office.

The evidence shows that Gager, a bookkeeper employed by the plaintiff, examined the defendant's books at its mill in Northampton, Mass., and found that during the period of infringment it bought 6,-975,142 holders. He was also shown all empty holders, and by counting them found 891,500 on hand. From this evidence the master concluded that the defendant used and sold 6,083,642 infringing holders, containing 11,882½ pounds of silk, at an average price per pound of $11.88, giving the sum of $141,164.10 as the sum at which the defendant billed the goods to its sales offices. The defendant contends that there is no evidence to support this finding; but I think that the testimony of the witness Gager was sufficient to throw upon the defendant the burden of proving how the holders had been disposed of, and that in view of its failure to produce its books and records the master's finding should be sustained. Continuous Glass Press Co. v. Schmertz Wire Glass Co., supra.

The master further found, in the face of defendant's undisputed evidence that the concerns in Baltimore, Boston, Cincinnati, and St. Louis were independent concerns, that the defendant was chargeable with an additional $2.64 per pound on all silk billed to its own offices, as well as to these independent concerns, which amounted to 11,888½ pounds, or $31,369.80. The latter conclusion makes no allowance for selling expenses, and ignores the fact that the price at which goods were billed to customers by the New York office were subject to a 10 per cent. discount.

The plaintiff says that this was proper, because there was no evidence that this discount was allowed. The statement in the defendant's account of July 12, 1910, that this discount was allowed, is part of the statement used as an admission of the fact that the holder goods were billed to customers at prices higher than those at which they were billed to the New York office. It was incompetent to use only that part of the statement advantageous to the plaintiff and ignore the part qualifying it. Nor is there any evidence whatever to show that the defendant should be charged with $2.64 on each pound of silk sold by the independent sales agencies. I conclude, therefore, that the correct sum or total amount with which the defendant should be charged is $141,164.10.

All of the evidence on which the master found that the cost to the defendant of manufacturing the embroidery silk sold by it in infringing holders and the cost of putting it into such holders was $85,392.65 was evidence of the cost of that process to the Brainard & Armstrong Company and other manufacturers of the same grade of embroidery silk. The defendant contends that this evidence was incompetent, because the profits for which an infringer must account are not those he might reasonably have made, but those which he actually did make, by the use of the plaintiff's invention. But it appears that, in calculating the average cost to the Monotuck Silk Company, at least quantities as well as prices were taken into consideration. And in view of the defendant's unexplained failure to produce its books this evidence was sufficient to sustain the master's finding.

The master's findings that the defendant's cost of advancing raw silk to embroidery silk was $1.12 per pound, and that its cost of putting embroidery silk into the infringing holders was $1.0362 per pound, are based on Fuller's testimony, and should be sustained on the principle above stated.

It is contended that the master erred in deducting from the defendant's cost of manufacturing the skeins and putting them in holders $8,653.48, the amount received from Procter & Gamble for the advertisement of Ivory Soap carried on the infringing holders, because these payments were made under a contract antedating the sale by the defendant of silk in holders, whereby Procter & Gamble paid for the advertisement of Ivory Soap on all embroidery silk sold by the defendant. But the amount which Procter & Gamble agreed to pay under that contract for the advertisement on the holders was measured by the cost of the holders, and reduced its costs to the defendant to the

extent of that payment.  The exception to this finding, for this reason, is overruled.

My arithmetical conclusions are as follows:

The defendant should be charged with................................$111.164.10
The total cost to it to be deducted is............................... 85,392.65
                                                                    ───────────
    Leaving ....................................................:....$ 55,771.45
To which should be added Procter & Gamble payment.............  8,653.48

Making the amount for which judgment should be rendered........$ 64,424.93

Or, figuring on another basis:

The master's report recommended judgment for..................$ 95,794.73
From which should be deducted, as error, 11,882½ pounds silk, at
    $2.64, discussed supra........................................ 31,369.80
                                                                    ───────────
Leaving the amount for which judgment should be rendered.......$ 64,424.93

The master's report is accordingly modified, and, as modified, is confirmed.  Judgment may be entered for the plaintiff, to recover of the defendant $64,424.93 and costs, together with interest from the date of the master's report; and it is so ordered.