**BARBER ASPHALT PAVING CO. v. STAND-ARD ASPHALT & RUBBER CO.**

Circuit Court of Appeals, Seventh Circuit.
October 4, 1928.

No. 3614.

See, also, 16 F.(2d) 751.

Certiorari denied by Supreme Court, 49 S. Ct. 250, 73 L. Ed. ——.

Chas. Neave, of New York City, for appellant.

Alexander F. Reichmann, of Chicago, Ill., for appellee.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The plaintiff, Standard Asphalt & Rubber Company, brought suit to enjoin the further infringement of its Culmer patents (process and product), Nos. 635,429 and 635,430, and to recover damages for past infringements. While the suit was pending, the two patents expired, and the injunctive relief was not further pressed. The court subsequently found the patent valid and infringed, and ordered an accounting of defendant's profits. The master's report was approved by the District Court, and a decree in favor of the plaintiff for $650,044.83, together with interest from January 6, 1921, at the rate of 5 per cent. was duly entered.

Defendant's contentions on this appeal may be considered under three heads: · (a) Defects in plaintiff's title. (b) The invalidity of the patents. (c) Erroneous allowance or disallowance of items involved in the accounting. ·

The asserted weakness in plaintiff's chain of title is traceable to an assignment bearing date December 14, 1899, from Culmer to the Guardian Trust Company of Chicago, Ill. There was no reconveyance from the Guardian Trust Company to the Culmers or to the plaintiff.

Plaintiff asserts (a) that the record title is in it; and (b) that whatever interest the Guardian Trust Company, as trustee, may have had in the patents, was lost through abandonment.

To ascertain the interest of the Guardian Trust Company, it is necessary to examine the entire transaction as well as the several instruments which the parties executed. It appears therefrom that Culmer, when an applicant for the patents, had dealings with the Byrd Syndicate Company, Limited, of the city of London, a company apparently desirous of acquiring the inventions. For a recited consideration of $12,500, Culmer gave the Byrd Syndicate an option to buy the invention and the patents that might issue. The purchase price was fixed at $100,000.

On December 14, 1919, while the option agreement was still in force, a new or supplementary agreement was executed by the parties whereby the Culmers agreed to execute the so-called assignment (defendant's reliance herein) of the patents, then issued, to the Guardian Trust Company.

To call this document running to the trust company an assignment would be a misnomer. True, there were words of assignment therein, but this document was but a furtherance of the option agreement that ran to the Byrd Syndicate. The deposit of the patents with the trust company and the execution of this agreement by Culmer was merely to secure Culmer's word given in the aforesaid option to sell. Culmer distinctly reserved title and the right to sell the patent. He did agree, however, for a fixed time, not to sell for less than a stated price without the consent of the Byrd Syndicate and further agreed that, if a sale was made for a sum above such price (in which case the Byrd Syndicate's consent was unnecessary) a stipulated cash payment to the Byrd Syndicate would be made.

The agreement provided:

"It being the understanding and agreement that said first parties shall only be obligated to pay said sum from and out of the proceeds of any sale of said patented process and improvements that may be made from time to time, when and as said sale is made; it being covenanted and agreed, however, on the part of parties of the first part (Culmers) that they will not at any time sell without the consent of the party of the second part hereto for a less sum than the amount of said loan; it not being the intention of this agreement to interfere with the right of disposition of said patents and processes on the part of parties of the first part, subject to this single reservation as to price in the event that the party of the second part hereto does not avail itself of the option heretofore mentioned."

Construing all the agreements together, we conclude that the Culmers merely conveyed to the Byrd Syndicate an option to buy the invention and the patents; that title remained in the patentee subject to be divested only by the optionee exercising its option; that, if any claim for moneys advanced existed, it did not rise to the dignity of an interest in the patent. The Guardian Trust Company acquired no title to, or in, the patent which necessitated its being made a party to this suit.

*Validity.* Appellant challenges the validity of the Culmer patents, relying entirely on the Byerley patent, No. 524,130, issued October 7, 1894, as an anticipation. The two Culmer patents, No. 635,429 and No. 635,430, were issued October 24, 1899.

All of the patents involved have long since expired. No rights other than those involved in the present suit are dependent upon them.

These two patents have furnished the ammunition for many legal battles. The extent of Byerley's disclosure, the improvement of Culmer over Byerley, Byerley's anticipation of Culmer—these and kindred subjects filled many a volume of testimony when these patents were in their prime.

Carrying the figure of speech a little further, these disputed subjects may be said to have constituted the battlefield over which many a company of highly trained experts marched and remarched and then advanced and retreated again, behind and through a heavy barrage of smoke produced by a mixture of presumption and extensive use in predetermined proportions. In all of these battles, the Culmer forces were triumphant at the end of a long struggle, and in none of them did the Byerley forces surrender without exhausting their full strength.

In short, in all of the suits where these patents were pending, Culmer was sustained

over Byerley. Byerley v. Standard Asphalt and Rubber Co. (C. C.) 189 F. 759; Byerley v. Sun Co. (C. C.) 181 F. 138; Id. (C. C. A.) 184 F. 455; Id. (D. C.) 226 F. 759; Byerley v. Baraber Asphalt Co. (D. C.) 230 F. 995.

Doubtless more testimony was offered in the present suit than in any of the other legal battles, but the issues were the same, and the decision in the District Court was the same as in all of the other controversies.

■ Appellant is, of course, not bound by any decision to which it was not a party. Nevertheless the numerous holdings in favor of the validity of the Culmer patents add much to the presumption which attends their issuance. If we were otherwise in doubt respecting the extent of the Byerley anticipation, we would feel constrained to follow these decisions. But there is evidence in the record before us which, aside from the judicial decisions referred to, resolves this close question of validity in appellee's favor.

*Accounting.* Numerous errors are assigned that deal with the master's computation of appellant's profits. Their consideration necessitates a brief preliminary statement.

Appellant conducted a large business, which covered numerous branches and different materials. The average amount of its capital invested was $40,100,000. Its total business, as by it stated, during the infringing period, was approximately $100,000,000. Its total profits was by it stated to be $6,000,000. Its total business in roofing and compounds was $6,000,000. To separate the profits derived from the manufacture and sale of the infringing material from the total net profits was the burdensome and difficult task of the master. And this burden was enhanced by the inability of the accountants to agree upon any item. To a large degree, the contest became one of theories advanced by partisan accountants.

The divergence of these views and results is stated by the master thus:

"It was claimed on behalf of the plaintiff that the adjusted net profits growing out of the infringement and accruing to the plaintiff might reasonably and rightfully be stated anywhere from $448,366.16 to $1,648,709.34. While the contention in behalf of defendant was a net loss on the infringing product of $810,206.02, reduced finally to $484,862.31. * * * The total difference between the parties, adding the plus and minus figures, etc., was $2,133,571.65."

Neither on the facts nor the law were the divergent views of opposing counsel suscep-

tible of reconciliation. The master, in a full and complete report, took up the contentions of the parties on each item and found the amount due to be $650,044.83. The court approved this report, and entered a decree for the aforesaid sum with interest at 5 per cent. from February 23, 1921.

The statement of the master showing how he reached his conclusion is herewith set forth:

The Master's Computation of Profit.

| | | | |
|---|---|---|---|
| (a) Manufacturing profit on roofings and misc. compounds | | | $ 656,886 10 |
| (b) Additional profit on materials in roofing and misc. compounds | | | 572,341 17 |
| (c) Corrected manufacturing profit on roofings and misc. compounds | | | $1,229,227 27 |
| Profit on paving materials: | | | |
| (d) Asphalt block cement | $119,739 41 | | |
| (e) Road asphalt made in fire stills | 47,814 62 | | 167,554 03 |
| | | | $1,396,781 30 |
| Deduct: | | | |
| (f) Advertising | | $161,614 56 | |
| (g) Interest on invested capital | | 206,287 76 | |
| (h) Depreciation on plant investment | $ 81,771 36 | | |
| (i) Worthless accounts and allowances | 7,539 53 | | |
| (j) Cash discounts | 00,000 00 | | |
| (k) Credit and collection expenses of treasurer's department | 00,000 00 | | |
| (l) Traveling salesmen's salaries and expenses | 195,175 34 | | |
| (m) General sales agents' and clerks' salaries and expenses | 94,347 87 | | |
| | | 378,834 15 | 746,736 47 |
| Net profit awarded plaintiff | | | $ 650,044 83 |

We shall accept this statement, as it was approved by the court, save as appellant convinces us of error in it.

It would serve no useful purpose to discuss at length any asserted error which we reject because the evidence thereon is conflicting. We will therefore content ourselves with disposing of such assignments by stating our conclusions.

We will follow the report, item by item.

Item (a) is concededly correct.

Item (b) is attacked by appellant for two reasons: First, the master charged the asphalt at "cost" rather than at "transfer value." Second, in determining cost, the master excluded a loss which defendant suffered on its so-called Choctaw leasehold.

As before stated, appellant was engaged in various lines of business. It mined and refined natural asphalt and marketed these products. It sold and manufactured other asphaltic products for which its refined asphalts formed a base. It made and sold prepared roofings.

The assignment of error we are now considering presents this question: Was the infringer chargeable with the profits which it made in mining, transporting, and refining the asphalts which were used by it in the manufacture of the material which infringed appellee's patents? That it was liable to appellee for the profits which it made in manufacturing and selling the prepared roofing is not denied. But appellant insists that its profits derived from the mining and refining of natural asphalts should not be included in the recoverable profits.

The master and the court found for appellee. This disputed item amounts to $237,-912.02.

Appellee cites Providence Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566; Lee v. Malleable Iron Range Co. (D. C.) 247 F. 795; Callaghan v. Myers, 128 U. S. 658, 9 S. Ct. 177, 32 L. Ed. 547; Conroy v. Penn Electrical & Manufacturing Co. (C. C. A.) 199 F. 427.

Appellant, on the other hand, cites Webster Loom Co. v. Higgins (C. C.) 43 F. 673; Hemolin Co. v. Harway Dyewood & Extract Mfg. Co. (C. C. A.) 166 F. 434; Armstrong v. Belding Bros. & Co. (C. C.) 178 F. 554; Byerly v. Sun Co. (D. C.) 226 F. 759.

From a study of all of these cases, we conclude:

(a) That, where the infringer purchases material for use in manufacturing an infringing commodity, the cost price of the material rather than its market value should be used in computing profits.

(b) Where noninfringing commodities which are marketable, that is, fit for market, are produced by the infringer and subsequently used by him in making the infringing products, then market value (ordinarily selling or transfer value) rather than cost to the infringer, is the proper basis for determining profits.

Good reason supports this distinction.

The patentee's right to recover from an infringer is due to the latter's invasion of the former's rights. The infringer is a tort-feasor. He commits the tort only when he begins his infringement. So long as he engages in the making of a noninfringing commodity, ready for the market, he commits no wrong. Any profits that he makes in such enterprise belong to him. When he embarks upon the new enterprise, that of making infringing products or material, from noninfringing marketable commodities, he becomes accountable to the patentee. But his liability is limited by his wrongdoing.

This conclusion does no violence to the theory upon which an infringer is held as a trustee ex maleficio. For as such he is merely held for all of the profits that he derived from the manufacture, sale, or use, of the *infringing* products. It would be illogical to add to such profits those earned by the manufacturer when engaged in the lawful production of a *marketable* product.

*Choctaw leasehold.* We are not satisfied that the evidence justifies this deduction.

Respecting item (d), we conclude the evidence supports the master's finding.

As to item (e), we are satisfied that the evidence affirmatively shows that the road asphalt was not made in accordance with the Culmer process.

*Deductions.* As to item (f), appellant insists it should be credited with $404,036.41 for advertising. The master allowed but 40 per cent. of this sum, or $161,614.56. We are not satisfied that the master's finding should be disturbed.

(g) The same applies to the deduction for interest on invested capital. Concerning this item, appellant makes two criticisms. It contends, first, that the rate of interest should be changed from 5 per cent. to 6 per cent.; second, that the amount of invested capital should be increased. We reject both contentions. If we entirely ignored the interest rate prevailing in the state of Illinois, we nevertheless would not be justified in allowing a rate for the infringing period (1909–1916) in excess of 5 per cent. As to the amount of capital invested, the testimony affords support for the master's finding.

(h) and (i). These two items are accepted as found by the master.

(j) *Cash Discounts.* Appellant seeks an allowance of $88,842.42 for cash discounts. This item was wholly disallowed by the master. In passing upon the master's report, the court said:

"It cannot be successfully contended, and is not, but that an infringer is entitled to a credit such as the one here requested if it could be established with reasonable accuracy. This is one of the items which the master found against the defendant because of the fundamental fact that defendant so kept its own books that it was impossible to ascertain with reasonable accuracy what the discounts on the infringing products actually were."

Does the record support this conclusion?

Appellant allowed, in all cases, a discount of 2 per cent. for payment within 10 days. That a large percentage of its customers took the discount cannot be denied. Appellant, however, was charged with the full selling price of its merchandise without the allowance of any discount.

Appellant's expert prepared a statement concerning which he was cross-examined which showed, or attempted to show, the percentage of sales subject to discount for the years 1909 to 1913, inclusive. The table did not show all sales. It was not complete. It was nevertheless sufficient, we think, to form an intelligent basis for computing this item. Larson v. Wrigley (C. C. A.) 20 F.(2d) 830, 833.

(k), (l), and (m). Respecting these three items, we are not satisfied that the evidence warrants a revision of any of them.

 Disallowing item (e), it becomes necessary to modify item (g) for, if appellant is not to be charged with the profits on its road asphalt, it should not be credited with interest on the invested capital necessary to produce this material. Rather than return the record for further hearing, we have concluded to adjust this item by reducing the sum credited for interest by $35,000.

The decree is modified by inserting the sum of $310,475.76 in lieu of $650,044.83. In all other respects it is affirmed. Costs in this court will be borne equally by both parties, excepting only that appellant shall pay all of the costs for printing the original transcript and the amount which the Supreme Court directed it should pay as terms for filing the second transcript.